FREDERICK UHLMAN, Appellant, *v.* THE NEW YORK LIFE INSURANCE COMPANY, Respondent.

109  421
109  660
109  421
117  459
109  421
139  180
109  421
155   19
155   23
109  421
160   30
160   36

A life insurance company issuing policies on the tontine or "ten years dividend system," is in no sense a trustee of any particular fund for the holder of such a policy; their relations are simply that of debtor and creditor, and the policyholder at the expiration of the ten years is not entitled to an accounting, in the absence of any evidence of misappropriation, wrong-doing or mistake on the part of the company.

*Bogardus* v. *N. Y. L. Ins. Co.* (101 N. Y. 328) distinguished and limited.
*Marvin* v. *Brooks* (94 id. 71) distinguished.

*It seems* the apportionment made by the company is not absolutely and at all events conclusive upon the policyholders. It is to be equitably made, and in the first instance by the officers or agents of the company, and *prima facie*, as so made, is to be regarded as equitable. The policyholder, however, has the right, upon proper allegations of fact, showing that the apportionment is not equitable or has been based upon erroneous principles, to have a trial and make proof of these allegations, and if proved, it is for the court to declare the proper principles upon which the apportionment is to be made.

The mere fact that an account in issue is complicated, does not in all cases oblige the court to take equitable jurisdiction; it is a matter largely within the discretion of the court, and if, considering all the circumstances, it appear that it would be of very great inconvenience and possible oppression to the defendant, the plaintiff will be remitted to his action at law.

*Pierce* v. *E. L. A. Society* (12 N. E. Rep. 858) distinguished.

(Argued April 16, 1888; decided June 5, 1888.)

APPEAL from order of the General Term of the Court of Common Pleas in and for the city and county of New York, made the first Monday of January, 1885, which reversed an interlocutory judgment in favor of plaintiff and granted a motion for a new trial. (Reported below, 13 Daly, 47.)

The nature of the action and the material facts are stated in the opinion.

*Alex. Blumensteil* for appellant. The defendant by the terms of the policy became the bailiff of the dividends and earnings of the policies of this class and agreed to preserve and equitably distribute or apportion them. This creates

a relation of trust which entitles plaintiff to an account. (*McMurray* v. *Ransom*, 3 Hill, 59, 61, 63, 67, 71 ; *Bogardus* v. *N. Y. Life Ins. Co.*, 101 N. Y. 328, 339 ; *Pierce* v. *Eq. L. As. Soc.*, 14 Wkly. Underwriter, 165.) The accounts being complicated, a bill for an accounting will lie. (*Marvin* v. *Brooks*, 94 N. Y. 71 ; Pomeroy's Equity Juris. § 1421 ; Willard's Equity, 90, 92 ; 1 Wait's Actions and Defenses, 174 ; 3 id. 169 ; 8 id. 34 ; 1 Story Equity Juris. §§ 447, 451, 459 ; *Dyckman* v. *Valentine*, 42 N. Y. 864 ; *Porter* v. *Spencer*, 2 Johns. Ch. 169, 171 ; *Foster* v. *Williams*, 1 Pai. 542 ; *Crosby* v. *Watts*, 41 Super. Ct. Rep. 208 ; *Hathaway* v. *Russell*, 7 Abb. N. C. 145 ; *Ludlow* v. *Simond*, 2 Caines' Cases, 1 ; 2 Am. Dec. 291, 298, 306 ; *Sturtevant* v. *Goode*, 27 id. 586 ; *Shepherd* v. *Brown*, 7 L. J. [N. S.] 7 ; *Hill* v. *South S. R. Co.*, 11 Jur. [N. S.] 192 ; *Badger* v. *McNamara*, 123 Mass. 117, 119 ; *Pratt* v. *Tuttle*, 7 Mass. Law Rep. 16 ; *Foley* v. *Hill*, 2 H. L. Cases, 28 ; *Padwick* v. *Stanley*, 9 Hare, 627 ; *Heming* v. *Pugh*, 4 Giff. 456 ; *Nixon* v. *Bright*, 4 L. R. Ch. 292 ; *Cooke* v. *Bethan*, 4 Jur. 957 ; *Taff Valley R. R. Co.* v. *Nixon*, 1 H. L. Cases, 111 ; *Scott* v. *Liverpool Corporation*, 5 Jur. [N. S.] 105 ; *Padwick* v. *Hurst*, 18 Beav. 575 ; *Harrington* v. *Churchman*, 6 Jur. [N. S.] 576 ; *Bliss* v. *Smith*, 34 Beav. 508 ; *Kimberly* v. *Dick*, 4 L. J. Ch. 38 ; *Blyth* v. *Whiffin*, 27 L. J. [N. S.] 230.) Plaintiff has not unreasonably delayed bringing his suit. (*Platt* v. *Platt*, 58 N. Y. 646 ; *McMurray* v. *McMurray*, 66 id. 175 ; *Boardman* v. *Lake Shore & M. S. R. Co.*, 84 id. 157.)

*William B. Hornblower* for respondent. To entitle plaintiff to an accounting he must establish : (1.) That some trust relation exists between him and defendant. (2.) That the accounting is incidental to some other form of equitable relief asked for by the complaint. (3.) That the complicated nature of the accounts rendered a resort to equity necessary. (*Marvin* v. *Brooks*, 94 N. Y. 80 ; 1 Story's Eq. Jur., § 459 and note 5.) A bill for an account will ordinarily lie only where there is some other ground for equitable jurisdiction,

such as the right to an injunction, or the existence of a fiduciary relation, or in some special cases, where there is a peculiarly complicated account. (*Root* v. *Railway Co.*, 105 U. S. 189, 216; Pomeroy Eq. Jur., § 1421 and note 4; *Phillips* v. *Phillips*, 9 Hare, 471; *Taff Vale R. Co.*, 1. H. L. Case, 119, 121.) There is no trust relation between the plaintiff and the defendant. (*Verplanck* v. *Mercantile Ins. Co.*, 1 Edw. Ch. 84; *Karnes* v. *R. & G. V. R. R. Co.*, 4 Abb. Pr. [N. S.] 107; *Cohen* v. *N. Y. Mut. Life Ins. Co.*, 50 N. Y. 624; *People* v. *Security L. Ins. & An. Co.*, 78 id. 124; *Bewley* v. *Eq. L. As. Soc.*, 61 How. Pr. 344; *Mut. Benefit L. Ins. Co.* v. *Hillyard*, 37 N. J. L. 444; *Taylor* v. *Charter Oak Life Ins. Co.*, 9 Daly, 489, 498, 500; *Hencken* v. *U. S. Life Ins. Co.*, 11 id. 282; *Luling* v. *At. Mut. L. Ins. Co.*, 45 Barb., 510; 50 id. 520; 51 N. Y. 207; 45 Barb. 514.) The policyholders insured under the "ten year dividend system," occupy no different relation to the company from that occupied by other policyholders. (*Bogardus* v. *N. Y. L. Ins. Co.*, 101 N. Y. 328, 339.) To constitute a trust relation there must be a fund, the legal title to which is in one person and the beneficial or equitable title is in another, or else the party holding the fund must occupy the relation of agency to the owner of the fund, and be bound to keep the fund separate from his own moneys, either actually or constructively. (*Foley* v. *Hill*, 2 H. of L. Cases, 28, 35; *Bogardus* v. *N. Y. L. Ins. Co.*, 101 N. Y. 338, 339; *Salter* v. *Ham*, 31 id. 321; *Marvin* v. *Brooks*, 94 id. 80; *Robins* v. *Fulconer*, 43 N. Y. Sup. Ct. 363, 372; *Bussing* v. *Thompson*, 15 How. Pr. 97; *McBurney* v. *Martin*, 6 Rob. 502; *Stoll* v. *King*, 8 How. Pr. 97; *Morange* v. *Waldron*, 6 Hun, 529; *Buchanan Farm Oil Co.* v. *Woodman*, 1 id. 641; *Sutton* v. *De Camp*, 4 Abb. Pr. [N. S.] 484; *Goodridge* v. *Dunbar*, 17 Barb. 644; *Angus* v. *Duscombe*, 8 How. Pr. 14; *Grover & Baker Sewing Machine Co.* v. *Clinton*, 5 Biss. 324.) There is no equitable relief to which the plaintiff is entitled other than the accounting itself. (*Foley* v. *Hill*, 2 H. of L. Cases, 28, 42; 1 Pomeroy's Jurisprudence, 237.) The complicated nature of the

accounts is not sufficient to give a court of equity jurisdiction of an accounting, especially where the accounts are not mutual. (*Phillips* v. *Phillips*, 9 Hare, 471; *Fowle* v. *Lawrason*, 5 Peters, 495; *Norwich & Worcester R. R. Co.* v. *Story*, 17 Conn. 364; *Hipp* v. *Baber*, 19 How. 271; *Ellis* v. *Davis*, 109 U. S. 493; *Salter* v. *Ham*, 31 N. Y. 321; *Marvin* v. *Brooks*, 94 id. 71.) Even if a bill for an account can be entertained solely because the accounts are complicated, yet it is discretionary with the court to entertain such a bill, and not a matter of right as in cases of trust. (*N. E. R. Co.* v. *Martin*, 2 Phill. 758; *Phillips* v. *Phillips*, 9 Hare, 471; *Bliss* v. *Smith*, 34 Beav. 508.) An accounting is not a matter of right, but of discretion, and a decree will not be made except upon at least *prima facie* proof of wrong-doing, fraud or breach of contract. (*Jones* v. *N. Y. Life Ins. Co.*, unreported; *Karnes* v. *Rochester & G. V. R. R. Co.*, 4 Abb. Pr. [N. S.] 107; *Luling* v. *Atlantic Ins. Co.*, 45 Barb. 510.)

*Charles B. Alexander* for respondent. The use of the word apportion vests in the defendant the right to determine, in its discretion, the equitable amount which each policy is to receive as a tontine dividend. (*Coyne* v. *Weaver*, 84 N. Y. 386; *Knapp* v. *Warner*, 57 id. 668; *White* v. *Hoyt*, 73 id. 505; *Parshall* v. *Eggert*, 54 id. 18; *Woodruff* v. *Woodruff*, 52 id. 53; *Harris* v. *Jex*, 55 id. 421; *Haight* v. *Day*, 1 Johns. Ch. 18; *Clark* v. *Brooklyn Bank*, 1 Ed. Ch. 368; 1 Story's Eq. Juris. 475a; *Walker* v. *Devereaux*, 4 Paige, 253; *Fisher* v. *Charter Oak Life Ins. Co.*, 52 N. Y. Sup. Ct. 179, 188.) The agreement is one made for the benefit of the whole body of policyholders. Except as apportioned, or, in other words, except for the amount so apportioned, no cause of action exists. (*Del. & Hud. Canal Co.* v. *Pa. Coal Co.*, 50 N. Y. 250; *Scott* v. *Avery*, 5 H. of L. Cases, 811; *United States* v. *Robeson*, 9 Peters, 319; *Perkins* v. *U. S. Electric Light Co.*, 15 The Rep. 680; *Milnes* v. *Gery*, 14 Vesey, 400; *Scott* v. *Corporation of Liverpool*, 3 De Gex & Jones, 334; *Hood* v. *Hartshorn*, 100 Mass. 117; *Butler* v.

*Duncan*, 24 W. R. 447.) The policy and the complaint treat the amount to be apportioned as a dividend by the pleader, he is concluded by the complaint as well as by the contract. (*Meeker* v. *Wright*, 76 N. Y. 272; *Davis* v. *Mayor*, etc., 14 id. 506; *Fisher* v. *Charter Oak L. Ins. Co.*, 52 N. Y. Supr. Ct. 179; *Chase* v. *Vanderbilt*, 37 id. 334; *Webb* v. *Vanderbilt*, 39 id. 9; *Williams* v. *Western Union Tel. Co.*, 93 N. Y. 192; *Karnes* v. *R. & G. R. R. Co.*, 4 Abb. [N. S.] 107; *Verplanck* v. *Mercantile Ins. Co.*, 1 Edw. 84; *Luling* v. *Atlantic Mut. Ins. Co.*, 45 Barb. 510; *Ely* v. *Sprague*, 1 Clark, 351; *State of La.* v. *Bank of La.*, 3 La. 771; *Pratt* v. *Pratt*, 33 Conn. 446; *Scott* v. *Eagle Fire Ins. Co.*, 7 Paige, 198.) A shareholder has no right to a share in the profits until they are declared. (*Goodwin* v. *Hardy*, 57 Me. 143; *Minot* v. *Paine*, 99 Mass. 101; *Granger* v. *Bassett*, 98 id. 462; *Phelps* v. *Farmers' Bank*, 26 Conn. 269; *Hyatt* v. *Allen*, 56 N. Y. 553; *Jones* v. *L. H. & R. R. R. Co.*, 57 id. 196; *Brundage* v. *Brundage*, 1 N. Y. Supr Ct. [T. & C.], 82.) For a suit merely for an account of gains and profits, there must be some equitable ground of relief in addition to the mere demand for an account of that kind. (*Consolidated Middlings Purifier Co.* v. *Wolf*, 28 Fed. Rep. 814; *Root* v. *R. R. Co.*, 105 U. S. 189; *Smith* v. *London & S. E. Railway Co.*, Kay, 408; *Bailey* v. *Taylor*, 1 Russ & M. 73.) A court of equity will not sustain a bill for discovery and assessment of profits, unless the bill shows that some other equitable relief is sought, to which the discovery and accounting are simply collateral. (*Jewett* v. *Bournan*, 39 N. J. Eq. 174; *Badger* v. *McNamara*, 123 Mass. 117; *Bayley* v. *Taylor*, 1 Russ & M. 73; Pomeroy's Eq. Juris., § 178; Bouvier's Dictionary, title "Account at Law.")

PECKHAM, J. The plaintiff commence ⌐his action for the purpose of obtaining an accounting from the defendant in regard to matters stated in the complaint. It was therein alleged that on the 29th of December, 1871, the defendant

issued to the plaintiff a certain policy of insurance, and that the plaintiff had duly complied with all the conditions of said policy; that it was a policy known as "the ten year dividend system policy," and that the ten years expired in December, 1881; that all the premiums had been paid by the plaintiff during that time and the policy was in force at the time of the commencement of this action. The plaintiff then alleged, upon information and belief, that the defendant, during this time, had wrongfully appropriated the surplus and profits, or a large portion thereof, belonging to the plaintiff under the policy; and had diverted the same to other purposes than the benefit of the plaintiff; and that it had not kept the fund and its accumulations separate; and that defendant refused, for dishonest and unlawful reasons, to furnish the plaintiff with an account as demanded. Plaintiff also alleged that defendant became a trustee of the various moneys that were paid to it on account of the policies of the class to which the plaintiff's policy belonged, and that plaintiff, relying upon the terms of said policy and the supposed honesty of the defendant as a trustee of the funds above mentioned, took out the said policy and paid the premiums required and assumed the risks and conditions mentioned therein, and that he had, in all things, duly performed all the conditions of the policy. The plaintiff then prayed judgment that the defendant be compelled to render a true and just account to the plaintiff of the names of the parties insured by it under the system in which the plaintiff had been insured; the amount of each and every policy thus issued; a detailed account of premiums paid into and received by the defendant on account of said policies; the amount of surplus and profits which each of said policies had earned, together with a number of other details in regard to the accumulation and disposition of such fund. Judgment was also demanded that the defendant be compelled to make good and pay all such sums which it had unlawfully misappropriated or expended out of said fund, and that it be compelled to issue to the plaintiff an annuity bond of the amount to which he is entitled, or, at his option, to pay the value in

cash to him; and that a receiver of the fund, and all the books and papers connected therewith, be appointed pending this action, as well as after judgment, if it is deemed advisable and proper.

A copy of the policy issued by the defendant to the plaintiff was attached to and formed a part of the complaint, by which it appeared that, on the 29th of December, 1871, the defendant insured the life of the plaintiff in the amount of $5,000, for the term of his natural life, commencing at noon on that day; that the policy was issued to and accepted by the assured (1) "on the special agreement and conditions relative to policies on the 'ten year dividend system;' and, (2), that the 'ten year dividend period' would be completed on the 29th of December, 1881; (3), that no dividend should be allowed or paid upon the policy unless the person whose life is assured shall survive until the completion of the ten year dividend period, and unless the policy shall then be in force; (4), that all surplus or profits derived from such policies on the ten year dividend system as shall cease to be in force before the completion of their respective ten year dividend periods, shall be apportioned equitably among such policies of the same class as shall complete their ten year dividend period; and that previous to the completion of its ten year dividend period this policy shall have no surrender value in cash or in a paid-up policy."

The defendant answered this complaint and denied all the allegations of misappropriation or wrong-doing, and alleged the proper and equitable apportionment of the fund and an offer to give to the plaintiff what he was entitled to therein, either in cash or in shape of an annuity bond. The issues thus joined came on for trial at a Special Term, and upon the trial plaintiff abandoned all allegations as to any misappropriation of the fund or any wrong-doing whatever in regard thereto, and based his cause of action upon his right to an accounting from the nature of the transaction as appearing in the contract evidenced by the policy of insurance issued to him. The plaintiff claimed that upon the mere proof of the issuing of a

policy, such as was issued to him, and that it had been kept alive during the ten year period, and was in full force at the time the dividend was payable, the right arose to demand from the defendant a full and complete accounting of the debit and credit items of what he terms the tontine account, with a list of the members entitled to participate therein, and also all the details demanded in his prayer for judgment in the complaint. He maintained that it was unnecessary to prove any of the allegations of misappropriation or improper action, or even any mistake in relation to the principles upon which the apportionment had been made, but that from the mere nature of the transaction itself he had the right to maintain an action to compel the defendant to make a full accounting in regard to all the matters spoken of.

The Special Term substantially held with the plaintiff, and granted an interlocutory judgment providing for the taking of an account, and for the entry of a judgment thereon for the amount of cash which should be found to be due the plaintiff, or, at his option, an annuity bond for an equal amount. The defendant, under section 1001 of the Code, upon a case made, moved for a new trial at the General Term, and after argument of that motion the General Term granted the motion for a new trial and vacated the judgment above mentioned. From the order granting a new trial the plaintiff has appealed here, giving the usual stipulation in such cases. He claims now to maintain the action and to have the right to an accounting upon the ground (1) that the relation between the plaintiff and defendant is not one solely of contract, but that as to the participation in the profits of this tontine system that relation is similar to one of trustee and *cestui que trust ;* (2), on the ground that the account itself, although there is but one side to it, is of a nature so difficult and complicated that it cannot be properly tried in an action at law, and hence this action is the appropriate remedy. The right to maintain this equitable action, based upon either or both these grounds, will therefore be discussed.

As to the first, we are convinced, after a careful exami-

nation of the character of the relations existing between these parties, that it cannot be said that the defendant is in any sense a trustee of any particular fund for the plaintiff, or that it acts as to him and in relation to any such fund in a fiduciary capacity. It has been held that the holder of a policy of insurance, even in a mutual company, was in no sense a partner of the corporation which issued the policy, and that the relation between the policyholder and the company was one of contract, measured by the terms of the policy. (See *Cohen* v. *N. Y. Mut. Life Ins. Co.*, 50 N. Y. 610; *People* v. *Security Life Ins. Co.*, 78 id. 114.) Upon the payment of the premiums by the various policyholders embraced in the tontine class the money immediately becomes the property of the company, and no title thereto remains in any of the policyholders. Under such a policy as this there is no obligation on the part of the corporation to keep the premiums paid on such policies separate and apart from its other funds. Nor is there any obligation on its part to invest such funds in any particular way or at any particular time. The contract contemplates the fact that the funds will be invested, but the character of such investment is left absolutely to the discretion of the defendant, except as it may be limited by the laws of the state. This question of separate investment and what use should be made of the moneys received on policies of this description has been discussed in the late case of *Bogardus* v. *New York Life Insurance Company* (101 N. Y. 328), in an opinion by RUGER, Ch. J. The policy in that case was substantially identical with the one in question, and what was said by the chief judge in that case upon this subject may be repeated and reaffirmed here. It is true that in speaking of the rights of the plaintiff in that case (which arose upon a failure of the plaintiff to keep the policy in force during the whole of the tontine period), the chief judge, while holding that the failure to keep it in force was fatal to any right of action which the plaintiff might otherwise have had, stated that " the method to be adopted by the defendant in managing the funds paid to it by its several policyholders was necessarily,

under the insurance laws of the state, confided to its judgment, discretion and skill, and the plaintiff has no cause of complaint in reference thereto, except in the event of the survivorship of Abraham Bogardus for ten years, and the continued existence of her policy. Upon the happening of such event and not until then, she would become entitled to an accounting as to such fund."

It was clearly not before the court, and the learned judge probably did not have in mind the particular rights as to an accounting, or under what circumstances those rights would exist in case the plaintiff's policy had been continued in force, and the question of those rights had been the question then to be decided. The subject under discussion was as to what, if any, rights the plaintiff in that case had, with the fact existing that the policy, which was the foundation of the whole transaction, had ceased to exist, and by the terms thereof had become forfeited before the action was commenced. It had ceased to exist because the plaintiff had refused or neglected to pay the premiums as they became due, and the plaintiff gave in evidence, as a reason for refusing to pay them, certain facts which it was claimed were sufficient to justify the refusal. This court decided against the plaintiff on that question, and that was the only proposition that was directly decided. Here the question is distinctly up as to what rights the plaintiff had after the expiration of the ten year period, the policy itself being in force, and unless there was some relation, fiduciary in its nature, the right to an accounting on that ground cannot be claimed.

We think the payment of a premium by the policyholders of this class of policies is much more like that of a deposit in a bank by a depositor, as to which it is conceded there is no such relation of trustee and *cestui que trust*. (See *Foley* v. *Hill*, 2 H. of L. Cases, 28, 32.) By the very terms of this policy the amount of the fund is necessarily uncertain. What it may be depends not only upon the number of policies taken out during the period, but upon the number of policies in the class which may lapse or become forfeited, and upon the

amount of the proper expenses of the company which shall justly become chargeable to this fund, so that the dividend which may come to the plaintiff or any other policyholder depends upon numerous contingencies, and in relation to all these matters the parties have agreed, in specific terms, contained in the policy itself, that this surplus or fund, derived as already stated, "shall be apportioned equitably among such policies of the same class as shall complete their ten year dividend period." Here is the extent of the obligation of the defendant — that it shall equitably apportion this sum. As has been said, there is no title in the plaintiff to any specific moneys. There is, in reality, no specific or separate fund, as it is made up simply by a system of debits and credits contained in the books of the company, which debits and credits are made during the running of the tontine period. There is no separation of the fund belonging to this system, and no legal necessity for such separation from any other fund or property belonging to the defendant. The situation of the parties is that of debtor and creditor simply, the amount of such debt being determinable by this equitable apportionment which, taking the language of the policy into consideration, necessarily means that the appointment is to be made by the corporation through its officers.

The case of *Marvin* v. *Brooks* (94 N. Y. 71), has no tendency whatever to uphold the plaintiff's claim. In that case the plaintiff had deposited with the defendant a certain sum of money upon the trust that defendant would use it in the purchase of certain property in which plaintiff was to have one-half and the defendant the other half interest. It was held that the money thus placed in the defendant's hands continued the property of the plaintiff, and was impressed with a trust in the hands of the defendant which entitled the plaintiff to call him to an accounting as to the disposition of the money, the purchase of the property, its price, etc., and that the burden rested upon the defendant of showing these facts. We have no doubt of the correctness of that decision, and just as little that it is no authority for the plaintiff's contention herein.

We do not, however, accede to the claim of the defendant herein to its full extent as made in the brief submitted, which is, that the apportionment, as made by the defendant, is absolutely and, at all events, conclusive upon the policyholders. We hold that, under the terms of this policy, the apportionment was to be equitably made, and, in the first instance, by the defendant's officers or agents. But, inasmuch as the agreement is that the apportionment shall be an equitable one, the question of what is an equitable one, all the facts and circumstances being known, may be one over which the courts have supervision. *Prima facie*, the apportionment, as made by the defendant, should be regarded as a compliance with the terms of the policy, or, in other words, should be regarded as an equitable apportionment. It should be thus regarded, because by the terms of the policy the duty of making it is cast upon the corporation, and it ought to be presumed that the defendant has performed its duty instead of presuming that it has failed to do so. But the question is still left, has or has it not complied with its agreement to make an equitable apportionment? And the plaintiff, and all others similarly situated, have the right, upon proper allegations of fact showing that the apportionment made by the defendant is not equitable, or has been based upon erroneous principles, to have a trial and make proof of such allegations, and, if proved, the court will declare the proper principles upon which the apportionment is to be made, so as to become an equitable apportionment. The various cases cited in the brief submitted, where the legislature has appointed parties to apportion stock in a bank created by its laws, etc., and where the courts have held that the apportionment by the board thus created was final, do not, we think, conclude us here. The principles are entirely different. But as the plaintiff herein has made no proof of any misappropriation or wrong-doing, we are of the opinion that, upon the first question argued, he has failed to show any right to an accounting by the defendant.

The second ground upon which an accounting was claimed was that the account was complicated. There are, undoubtedly,

many expressions in the books stating that where accounts are so difficult and complicated that it would be impracticable to examine them upon a trial at *nisi prius*, equity takes jurisdiction of an action, even on that ground alone. To this effect are Story's Equity Jurisprudence (§ 445); Willard's Equity Jurisprudence (p. 91); Pomeroy's Equity Jurisprudence (§ 1421). In note 4 of the last above cited section, after stating the rule, as above mentioned (that the account should be so complicated that a court of law would be incompetent to examine it at *nisi prius* with the necessary accuracy), it is said: "But, under the present practice in England, matters of account may now be referred to officers or referees, so that the rule, as above stated, can now hardly be followed." (See *Taff Vale Railway Co.* v. *Nixon*, 1 H. L. C. 111, 119–121.) In speaking of an equitable jurisdiction to grant an accounting, this court, in *Marvin* v. *Brooks* (*supra*), stated, per FINCH, J.: that "the best considered review of the authorities puts the equitable jurisdiction upon three grounds, viz.: The complicated character of the accounts; the need of a discovery, and the existence of a fiduciary or trust relation. The necessity for a resort to equity for the first two reasons is now very slight, if it can be said to exist at all, since a court of law can send to a referee a long account, too complicated for the handling of a jury, and furnishes by an examination of the adverse party before trial, and the production and deposit of books and papers, almost as complete a means of discovery as could be furnished by a court of equity."

Judges in the English equity courts have been somewhat slow to maintain jurisdiction in a case where the ground thereof was solely that the account was complicated, and although there are very many cases in which the statement has been made that equity would sometimes take jurisdiction on that account, yet, in most of them, it is seen that there were added to that other grounds making it proper for equity to assume cognizance of the cases.

However it may be, it has, at least, been stated that whether

SICKELS — VOL. LXIV.     55

or not the court would take jurisdiction upon the sole ground of the account being complicated was a matter largely within the discretion of the court. (See *North-eastern R. W. Co.* v. *Martin,* 2 Phil. Ch. 758 ; also *Phillips* v. *Phillips,* 9 Hare, 471 ; and *Bliss* v. *Smith,* 34 Beav. 508.)

We are not inclined to enlarge the principle, or to hold that in all cases the mere fact of a complicated account being at issue will oblige the court to take jurisdiction. Considering the fact as stated by Finch, J., in the case above alluded to, that the plaintiff has now all the facilities for examining a complicated account in an action at law that he would have in equity, if there are other reasons, important and material ones, existing against the assumption of jurisdiction by a court of equity of an action of this nature, those reasons should have their full weight, and if, after giving due effect to all the circumstances, it appear that there would be a balance of very great inconvenience and possible oppression to the defendant, the plaintiff should be remitted to his action at law to recover his damages, in which action, if the taking of an account becomes necessary, it may be easily taken. In such a case as this we think there is such balance of inconvenience existing in favor of the defendant.

Upon the theory of the plaintiff every one of the policy-holders of his class has a right of action, such as this, against the defendant to call it to an account, and to cause it to give in the trial of the action a detailed account of every transaction (proved by reference to or the production of its books, and by the oaths of its officers) which took place from the commencement to the termination of the tontine period in regard to those matters material to be known upon the question of an equitable apportionment of the fund. There would be no necessity for an allegation, much less the slightest even *prima facie* proof of wrong doing, or that there had been any mistake made by the company in the apportionment made by it. But the mere fact that an individual was the owner of one of those policies in force at the termination of the tontine period

would give him a right of action and a right to demand this proof from the defendant.

The mere statement of such a fact, it seems to us, is conclusive against the existence of any such right. Of course it is not to be supposed that each individual policyholder would avail himself of this right, but the fact that each one might, would place the company in the power of unscrupulous parties to take advantage of it for the purpose of endeavoring to levy contribution from it which it might pay in order to secure freedom to itself from troublesome, expensive, unnecessary and wholly disingenuous investigations (and made in numerous suits) into the affairs of the company and its accounts running through many years. That this should be permitted without an allegation, even on information and belief, that any fraud, mistake or impropriety in the accounts or in the manner of their statement, or in the result attained, had been made by the officers or agents of the company would seem to be intolerable.

Our attention has been called to a decision by the Massachusetts Court, of *Pierce* v. *Equitable Life Assurance Society* (reported in 12 North East. Rep. 858). That case was decided, under the peculiar wording of a statute of Massachusetts, in regard to complicated accounts, and we do not think it should be followed by the courts of this state.

Having examined the two grounds upon which the plaintiff based his right to maintain this action, and coming to the conclusion that neither is tenable, it follows that the General Term of the Common Pleas correctly granted a new trial, and that its order to that effect should be affirmed, and judgment absolute given against the plaintiff, with costs.

All concur, except RUGER, Ch. J., not voting.

Order affirmed and judgment accordingly.