THE MAYOR AND COMMON COUNCIL OF THE CITY OF
NEWARK ET AL. v. THE BOARD OF EQUALIZATION OF
TAXES OF NEW JERSEY ET AL.

Argued February 21, 1910—Decided October 18, 1910.

1. The act approved April 15th, 1907 (*Pamph. L., p.* 132),
   entitled "An act to require an annual apportionment and ac-
   counting of surplus of life insurance companies," did not create
   a new and distinct debt or liability as between life insurance
   companies and the state, so as to entitle such companies to an
   exemption from taxation upon surplus funds representing the
   earnings and profits distributable to deferred dividend policy-
   holders as a class.
2. The act approved April 15th, 1907, was not intended to effect
   and could not constitutionally effect any change in the relative
   rights of insurers and insured under existing policies of insur-
   ance, but was intended to effect an apportionment and segre-
   gation of the fund in which deferred dividend policyholders as a
   class were entitled to participate under the terms of their
   policies.
3. The passage of said act neither effected, nor was it intended to
   effect, any change in the Tax act of 1906.
4. The valuation of deferred dividend policies in accordance with
   the provisions of the Tax act of 1906 (*Pamph. L., p.* 418),
   by the commissioner of banking and insurance for the pur-
   pose of exemption from taxation, must be held to include
   as a factor in the estimate of valuation the debt or liability
   arising from the existence of the fund in the possession of the
   companies, payable under the terms of their contracts of insur-
   ance to deferred dividend policyholders as a class, and dealt with
   by the legislature in the act of 1907 only for purposes of regu-
   lation and administration.

On writ of *certiorari* removing judgment of the state board
of equalization of taxes.

Before Justices REED, TRENCHARD and MINTURN.

For the prosecutors, *Herbert Boggs* and *Samuel Kalisch.*

For the defendant, *Richard V. Lindabury* and *Edward D.*
*Duffield.*

The opinion of the court was delivered by

MINTURN, J. Prior to the passage of the act entitled "An act to require an annual apportionment and accounting of surplus of life insurance companies," approved April 15th, 1907, domestic life insurance companies issuing what is termed in insurance nomenclature, "deferred dividend policies," were under no legal or contractual obligation to ascertain and apportion the share of earnings of the company which such class of policyholders would be entitled to receive at any particular period during the contractural period specified in the policy, except in cases where specific allegations of fraud were presented in a bill in equity seeking an accounting. *Everson* v. *Equitable Life Insurance Society,* 68 *Fed. Rep.* 258; *Uhlman* v. *New York Life Insurance Co.,* 109 *N. Y.* 421; *Eastman* v. *New York Life Insurance Co.,* 62 *N. H.* 1.

The precise character in which such companies held these surplus accumulations was left in some doubt by judicial determination. Thus, in the cases referred to, it was held that no trust relationship existed between the contracting parties, and the same result was reached in Massachusetts. *Pierce* v. *Equitable Life Assurance Society,* 145 *Mass.* 56.

While in Wisconsin, the opposite view prevailed. *Ellinger* v. *Equitable Life Assurance Society,* 125 *Wis.* 643.

Such latter view seems also to have been the view entertained by the learned and distinguished founder of the defendant company ("Life Insurance and Other Subjects," by Hon. John F. Dryden).

In 1907, as a result of a public policy which was evolved quite generally throughout the states as the sequence of a widespread agitation for the regulation of the business of life insurance, it was sought to fix and determine the liability of the companies to the policyholders at stated periods under this form of insurance, and to compel apportionment of dividends to the policyholders as a class, to whom, upon the maturity of the policies, this revenue, according to the terms of the contract, might be conceded to belong.

The act of 1907 was the product of that period of agitation, and as such it must be construed in the light of the history of that period as well as the peculiar environment that caused its

enactment; for, as has been said by the Supreme Court of the United States, "courts in construing statutes may with propriety recur to the history of the times when it was passed; and this is frequently necessary in order to ascertain the reason as well as the meaning of particular provisions in it." *United States* v. *Union Pacific Railroad Co.,* 91 *U. S.* 72.

Its provisions are succinctly contained in one paragraph, as follows:

"An act to require an annual apportionment and accounting of surplus of life insurance companies.

"Be it enacted by the Senate and General Assembly of the State of New Jersey:

"1. Every domestic life insurance company doing business in this state, conducted on the mutual plan or in which policyholders are by the terms of their policies entitled to share in the profits or surplus shall, on all policies of life insurance heretofore or hereafter issued, under the conditions of which the distribution of surplus is deferred to a fixed or specified time and contingent upon the policy being in force and the insured living at that time, annually ascertain the amount of surplus to which all such policies as a separate class are entitled, and shall annually apportion to such policies as a class the amount of the surplus so ascertained, and carry the amount of such apportioned surplus, plus the actual interest earnings and accretions of such fund, as a distinct and separate liability to such class of policies on and for which the same was accumulated, and no company, or any of its officers, shall be permitted to use any part of such apportioned surplus fund for any purpose whatsoever other than for the express purpose for which the same was accumulated.

"2. All acts and parts of acts inconsistent with the provisions of this act are hereby repealed.

"Approved April 15th, 1907.  *Pamph. L., p.* 132."

The defendant company, in compliance with the provisions of this act, on February 10th, 1908, passed a resolution which provided that out of the total undivided profits or surplus of the company derived from deferred dividend policies, $8,016,-716.52 should be apportioned between the stockholders and the

deferred dividend policyholders; ten per cent. to the stockholders and ninety per cent., or $7,215,044.87, to the policyholders as a class; and on February 9th, 1909, the company in similar manner provided that out of the total undivided surplus and profits derived during the year 1908 from the same class of policies, there should be apportioned the sum of $9,431.533.44 between the stockholders and the deferred dividend policyholders, upon the same basis of apportionment as in the preceding year; which apportionment gave to the same class of policyholders the sum of $8,488,380.10.

On May 20th, 1909, the company presented to the board of assessment and revision of taxes of the city and taxing district of Newark its verified statement as required by the Tax act of 1906. *Pamph. L., p.* 418. That act, in providing a method of assessment and taxation of life insurance companies, directed:

*First.* That they should be assessed and taxed for the full amount of their property exclusive of real estate located in the state.

*Second.* That they should be entitled to a deduction therefrom of their debts and liabilities as they existed on the 31st day of December next.

*Third.* That in stating their liabilities on policies, the basis of such statement should be the value of such policies on the 31st day of December next, and not the gross amount of insurance represented by them.

*Fourth.* That the value should be ascertained by a computation by the state commissioner of banking and insurance; and by such standard of valuation as he may adopt at the time such computation shall be made.

The defendant company annually made its statements as required by the provisions of this act, but made no distinct claim for exemption for any part of the surplus fund represented by the deferred dividend policies as a class until after the passage of the act of 1907.

The statement of the company contained, in addition to the claim herein referred to, a claim for exemption for debts and liabilities and reserves on policies according to the estimate

of value of the commissioner of banking and insurance of $132,138,211, and this exemption was allowed and is not contested here.

But the city board of assessment rejected the claim for exemption on deferred dividend policies of $14,623,279.37, holding that this item did not constitute a debt or liability, as claimed by the company, within the meaning of the provisions of the Tax act, and, upon appeal, the county board of taxation sustained that contention. But the state board of equalization of taxes reversed this ruling, sustained·the claim of the company and allowed the deduction as a debt and liability of the company to the policyholders as a class, which therefore was constituted a proper item of exemption within the meaning of the Tax act, and from that determination the question thus controverted is presented to this court upon writ of *certiorari* prosecuted by the city.

If the fund in controversy is exempt from taxation, it is conceded that it became so only as a distinct debt or liability under the express terms of the act of 1907. That act, as has been demonstrated, is a remedial statute, intended to subserve a public policy, distinctly enunciated in its language. Its purpose is the ascertainment by the insurance companies themselves, annually, of the amount of. the surplus to which all such policies as a separate class are entitled; and "the apportionment of such surplus plus the actual interest earnings and accretions of such fund as a distinct and separate liability to such class of policies;" which surplus, when so ascertained and apportioned, "no company or any of its officers shall be permitted to use  *  *  *  for any purpose whatsoever, other than the express purpose for which the same was accumulated."

The legislative intent is here clearly manifested to segregate an existing fund, accumulated under contract, *inter partes* from the general assets of the companies, and to establish it by such segregation and identification as a distinct ascertained liability under the contract out of which such liability arises, to the class of policyholders to which it belonged under ·the terms of their contracts.

It was intended to enable the commissioner of banking and insurance to ascertain with certainty, born of the recorded admission of the companies, a distinct factor and important element in the computation of policy value, for the purposes of exemption.

The act superadded no increased value to this class of policy, nor did it inject into the contract any liability whatever not contemplated by the parties in its inception. If a distinct debt or liability was thus created, it was the evolution of a debt or liability *in esse,* from a condition of indistinctness and uncertainty to a plane of distinctness and certainty; because, manifestly, the learning is elementary that precludes legislative interference with vested contractual rights, and no claim for exemption under this legislation can be rationally defended which rests for its security upon an unconstitutional exercise of legislative power. The change sought to be effected by this legislation is of a regulative and administrative character, and depends for its existence not upon the act of the legislature, which simply imposes a rule of regulation and administration, but upon the act, discretion and judgment of the directors of the companies, who, possessing the fund, *eo nomine,* indicate the extent of its existence and its *quantum* with the earmarks of certainty and distinctness and thus segregating it, are commanded by the act to protect it inviolate from any other use.

In estimating the value of policies of this class for purposes of exemption, we must assume that the commissioner of banking and insurance, under the provisions of the act of 1906, considered this surplus as an asset eventually distributable among the policyholders of the class entitled to participate in its distribution, and therefore, *ex necessitate,* it became an existing factor in his computation of policy value. If the act of 1907 effectuates any change in this respect, it could only be to render more definite and certain an existing factor entering into the value of a class of policies, which theretofore for lack of administrative supervision was indefinite and indistinct, at least in legislative contemplation.

Manifestly, therefore, to admit the claim of the defendant,

is in effect to concede its right to a double exemption upon the same liability, since we must assume that a public officer, charged with the duty of estimating values for the purpose of exemption, considered in his estimate all the known factors which give value to the subject-matter of the estimate.

We find it unnecessary for the purpose of this determination to consider the character of a fund thus apportioned and segregated by legislative direction, as between the company and the policyholders of the class entitled to share in it. It must suffice to determine in this controversy the *status* of this fund as between the company and the state for the purposes of taxation; and in that respect we consider it precisely the same fund that existed prior to the passage of the act of 1907, without diminution or enlargement in *quantum*, and without deviation or change in the legal rights and liabilities of the parties *inter sese* under the contractual obligation creating it. It neither effected, nor does it purport to effect, any change in the act of 1906. The commissioner of banking and insurance is still under the duty to compute for exemption purposes the value of the policies of the class in question, in the language of the act, "by such standard of valuation as may be adopted and used by him at the time such computation shall be made according to law." Into this computation must necessarily enter with the other elements of value in the policy, the *quantum* of this fund for participation among the policyholders of this class; and the estimate of value thus made completes in its entirety the exemption contemplated by law.

The judgment of the state board of taxation will therefore be reversed and set aside, and the original assessment is affirmed, with costs.