McNally, J.
Motions 2594, 2615, 2617 and 2645 are consolidated and disposed of as follows. This is an action by thirty-five plaintiffs against sixteen defendants for a declaratory judgment as to alleged reserves established by the defendants to meet contingencies under the Disability Benefits Law (Workmen’s Compensation Law, art. 9); for an accounting in regard thereto, *247 and for a money judgment in favor of the plaintiffs to the extent indicated upon such an accounting.
The defendants move under subdivisions 1 and 4 of rule 106 and subdivision 1 of rule 107 and rule 212 of the Rules of Civil Practice to strike as sham allegations of the complaint, and to dismiss each of the causes of action.
The plaintiffs are the holders of insurance policies issued by the defendant companies. The policies, insofar as here material, were consequent on the enactment of the Disability Benefits Law. The statute provides for benefits to employed persons rendered incapable of working by sickness or other disability for causes unconnected with their employment (Workmen’s Compensation Law, §§ 203, 204). The burden of the cost of such benefits is imposed upon the employees and the employers (§ 209). A ceiling is placed upon the employees’ contributions and the balance of the cost is required to be assumed by the employers (§§ 209, 210). The obligation to pay the benefits of employees who become so disabled may be assumed by the employers directly or may be shifted by them to insurance companies such as defendants (§ 211).
In addition to benefits to disabled employed persons, the statute provides for benefits to disabled unemployed persons. Such benefits, however, are payable out of a Special Fund (§§ 207, 214). The Special Fund was initially established by a special assessment based upon payrolls for the period from January 1, 1950, to June 30, 1950 (§ 214). Provision is made for assessments by the Chairman of the Workmen’s Compensation Board to replenish the Special Fund. Such assessments, when indicated, are required to be made as promptly as practicable after April 1st on the basis of payrolls for the preceding calendar year (§§ 214, 228). The Special Fund is required to be maintained at a level of not less than $12,000,000 and toward that end if, as of April 1st during any year, the fund falls $1,000,000 or more below the minimum of $12,000,000, the Chairman of the Workmen’s Compensation Board is required to assess the amount of such deficit or twice the benefits paid under section 207, whichever sum is greater. Such assessments are to be made against the “ carriers ” who are defined under subdivision 10 of section 201 as ‘ the state fund, stock corporations, mutual corporations and reciprocal insurers which insure the payment of benefits provided pursuant to this article; and employers and associations of employers or of employees and trustees authorized or permitted to pay benefits under the provisions of this article.”
*248 The complaint alleges the following. Plaintiffs are organizations of employers in the hotel industry who are the owners and holders of group insurance policies issued by the defendants pursuant to the provisions of the Disability Benefits Law. For the period January 1, 1950, to June 30, 1950, an assessment of 2/10ths of 1% of wages paid to employees covered by the Disability Benefits Law was paid one half by the employees and one half by their employers, resulting in the establishment of a Special Fund in the sum of $10,030,778.02. During the period July 1, 1950, to and through the year 1952, plaintiffs procured from the defendant companies group insurance policies pursuant to the Disability Benefits Law. During said period, the plaintiffs paid to the defendants, in addition to premiums for other purposes, sums aggregating $24,000,000 to effect coverage for Special Fund assessments under section 214. The sums allegedly paid by the defendants to the Special Fund do not exceed $2,000,000. No further assessments can be made by the Chairman of the Workmen’s Compensation Board to replenish the Special Fund based upon the payrolls for the years 1950 to 1952, inclusive. The alleged reserves accumulated by the defendants represent “ extra loadings or charges ” allegedly received by them solely for the purpose of paying assessments to the Special Fund. The defendants hold the excess of $22,000,000 against a nonexistent liability and have refused to account therefor and to return said excess to the plaintiffs. In addition to said allegations the complaint purports to allege the purpose and intent of the Disability Benefits Law and to characterize the payments made by the plaintiffs to the defendants as “ extra loading or charge to be used for the sole purpose of paying assessments to replenish the Special Fund.”
There is no dispute as to the terms and provisions of the policies of insurance governing the relations between the plaintiffs and the defendants. It is the terms and provision of the policies and the provisions of the statute which control and not the plaintiffs’ nor the defendants’ conclusions with regard to them. (Greeff v. Equitable Life Assur. Soc., 160 N. Y. 19, 29; Gerdes v. Reynolds, 281 N. Y. 180; Didier v. Macfadden Publications, 299 N. Y. 49, 53; Red Robin Stores v. Rose, 274 App. Div. 462.)
Each policy of insurance provides for the payment of a stated premium. No provision is made therein relative to the application of the premium. It may be that in the course of fixing the premium each defendant filed with the Superintendent of Insurance and conveyed to the plaintiffs the constituent elements *249 thereof. None of the policies here involved, however, specifies the components of the premium and it is doubtful that the result would be different if such an itemization were contained therein. Each insurance policy requires the payment of premiums, provides for payment of Special Fund assessments by the insurer, makes no provision for the payment of any such assessment by the plaintiffs; contains no provision for reimbursement to the insurer in respect of such assessments, and no provision for reimbursement of premiums to the plaintiffs. The relation between the plaintiffs and defendants is defined by the terms of the policies of insurance herein. .(Uhlman v. New York Life Ins. Co., 109 N. Y. 421, 429.) The defendants assumed certain specified risks and the plaintiffs in return therefor undertook to pay the specified premiums. The defendants thereby assumed no obligation to account for the premiums. The policies of insurance, therefore, do not serve to substantiate any obligation on the part of the defendants to account for any reserves nor do they substantiate the allegations of the plaintiffs with relation to extra loading or charges. (Schants v. Oakman, 163 N. Y. 148,155-158; Uhlman v. New York Life Ins. Co., supra, p. 431.) Even if the polices provided for the distribution of surplus to the plaintiffs, the allegations of the complaint would not sustain the right to an accounting (Greef v. Equitable Life Assur. Soc., supra, pp. 36-39).
The statute does not enlarge the rights of the plaintiffs. It imposes the obligation to meet the assessments for Special Fund purposes upon carriers. For the purpose of Special Fund assessments the defendants are carriers (§ 214, § 201, subd. 10). The statute does not impose any obligation to account for the premiums here involved.
Plaintiffs argue that defendants received money “ for a specific purpose (and) cannot retain the money if the purpose is not carried out.” The cases relied on by plaintiffs (Acker v. Hanioti, 276 App. Div. 78; Barri v. City of New York, 16 N. Y. S. 2d 86, affd. 259 App. Div. 41)3) establish the right upon a complete failure of consideration to the recovery of money paid. Here the defendants have performed the obligations by them assumed under the insurance policies; there has been no failure of consideration.
Plaintiffs allege that the sole assessment made to replenish the Special Fund was that made on or about April 1, 1951, and resulted in a yield of $2,257,526.20, of which approximately $2,000,000 was paid by the defendants in this action; that the assets in the Special Fund were in excess of $11,000,000 on *250 March 31,1952, and March 31,1953; that no other Special Fund assessment may be made as to payrolls for said periods, and, therefore, the defendants have been unjustly enriched, and should be required to account to the plaintiffs for $22,000,000, the difference between $24,000,000, “ The extra loading or charge ”, and $2,000,000, the sole assessment, which sum of $22,000,000 is held by defendants as reserves.
The defendants, on the other hand, contend they are engaged in the business of writing accident and health policies; that their exposure for accident and health payments under the Disability Benefits Law is unlimited and, consequently, in the exercise of prudence commensurate with the risk involved, they have and are entitled to set aside from the total premiums received by them in respect of the policies of insurance involved funds or reserves sufficiently adequate to meet statutory assessments during the entire period they are engaged in the accident and health insurance business.
The plaintiffs do not rely on any provisions of the contracts of insurance in support of their right to an accounting in respect of the alleged reserves, nor do plaintiffs point to any statutory provision enabling them to avail themselves of the right to an accounting in reg’ard to such reserves. The contracts of insurance do not create any relation between the parties involving or giving rise to any fiduciary obligations. Except as required by statute, insurance companies deal with insureds at arm’s length. No relation involving trust or confidence is present. Consequently, there is no obligation on the part of the defendants to account to the plaintiffs for premiums received by them.
In the absence of contractual or statutory provisions for an accounting, or other relief, under such circumstances, the opposing views (plaintiffs’ limiting itself to the period during which • premiums were paid, and defendants’ envisioning the exposure during their entire existence) pose problems of public policy to be resolved by the Legislature and not the judiciary.
Although not made the basis for a declaratory judgment, plaintiffs, inter alia, contend they are primarily obligated in respect of the assessments for the Special Fund and that this obligation is a continuing one and is not terminated by the undertakings of the defendants to pay Special Fund assessments. Since it does not appear that the Chairman of the Workmen’s Compensation Board has assessed, or attempted to assess, the plaintiffs, and it does not appear that it is the chairman’s intention to so do at this time or within the immediate future, a declaration, in regard thereto, if sought, would be *251 clearly advisory and, therefore, premature. (Red Robin Stores v. Rose, 274 App. Div. 462, supra.)
The motions of the defendants pursuant to rule 103 of the Rules of Civil Practice to strike out the matter specified in the notices of motion as sham, and for judgment pursuant to subdivision 4 of rule 106 and rule 212 of the Rules of Civil Practice are, therefore, granted (Zwerdling v. Bent, 264 App. Div. 195; Matter of Manacher v. Central Coal Co., 205 Misc. 513, affd. 283 App. Div. 1048) with leave to the plaintiffs to serve an amended complaint within twenty days after service of a copy of this order with notice of entry thereof. (Didier v. Macfadden Publications, 299 N. Y. 49, supra.) In view of the foregoing disposition, it is unnecessary to pass on defendants’ application for other relief.