*633 OPINION OF THE COURT
Herman Cahn, J.
Defendant Metropolitan Life Insurance Company (MetLife) moves for an order dismissing the complaint (CPLR 3211 [a] [5], [7]).
Nature of Action
Plaintiff Joyce Rabouin has been the owner of a whole life insurance policy issued by MetLife since 1980. She claims that she, and other MetLife policyholders similarly situated (as members of a potential class of plaintiffs), have suffered damage as a result of MetLife’s handling of a fund created by the premiums it received from its whole life policyholders. Specifically, plaintiff alleges that “[d]uring a time period, the exact dates of which are presently unknown to plaintiff, but including at least the period 1989-1992 (‘Class Period’), defendant manipulated the income and assets purchased with the premiums paid on defendant’s whole life insurance policies. As a result, the pool of assets and earnings on the pool allocated to whole life insurance policies, as well as the income and dividends of whole life policies in force during that time, were reduced.” (Complaint ¶ 2.) In doing so, MetLife allegedly “failed to allocate to plaintiff and other class members the fair and equitable share of the income earned by premiums they paid. Instead, MetLife transferred policyholders’ income to subsidize payments on annuity contracts under a scheme in which bad or lower yielding investments were allocated to life insurance policies.” (Complaint ¶ 11.)
The purpose of this claimed misallocation was to shore up MetLife’s less profitable lines of insurance such as annuity contracts, allowing them to “show better investment performance” (complaint ¶ 21), at the expense of the more profitable lines of business, such as whole life. The end result, plaintiff claims, was a decrease in the amount of “assets, income and dividends” for holders of whole life policies (complaint ¶ 26), and a reduction in the buildup of cash value in each such policy. Plaintiff pleads claims for breach of contract (first cause of action), breach of fiduciary duty (second cause of action), violation of General Business Law § 349 (third cause of action), and seeks an accounting (fourth cause of action).
Rabouin maintains that MetLife stands in a fiduciary capacity vis-a-vis its policyholders. Consequently, its failure to dis *634 close that the premiums paid, by its whole life policyholders would be used to purchase investments which would benefit MetLife’s annuity holders amounts to fraudulent concealment, estopping MetLife from raising a defense based on any applicable Statute of Limitations.
MetLife challenges the validity and timeliness of each of the four causes of action.
Discussion
Fully half of the complaint falls on the single legal proposition that there is no fiduciary relationship between MetLife and its policyholders, such as plaintiff. (Uhlman v New York Life Ins. Co., 109 NY 421 [1888]; Greeff v Equitable Life Assur. Socy., 160 NY 19 [1899]; see also, Equitable Life Assur. Socy. v Brown, 213 US 25 [1909].) In Uhlman (supra, at 429), the Court of Appeals recognized that “[i]t has been held that a holder of a policy of insurance, even in a mutual company, was in no sense a partner of the corporation which issued the policy, and that the relation between the policy-holder and the company was one of contract, measured by the terms of the policy [citation omitted].” The Court went on to hold that payment of the premium by the policyholder did not create a fiduciary relationship, but was “much more like that of a deposit in a bank by a depositor.” (Supra, at 430.) “Except as required by statute, insurance companies deal with insureds at arm’s length. No relationship involving trust or confidence is present.” (New York Hotel Trades Council v Prudential Ins. Co., 1 Misc 2d 245, 250 [Sup Ct, NY County 1955], affd 1 AD2d 952 [1st Dept 1956]; and see, Methodist Hosp. v State Ins. Fund, 64 NY2d 365, 375 [1985].)[1]
Undoubtedly, there are instances where a fiduciary relationship springs into existence as a result of the dealings between *635 an insurer and its insured. (See, e.g., Hartford Acc. & Indem. Co. v Michigan Mut. Ins. Co., 93 AD2d 337 [1st Dept 1983], affd 61 NY2d 569 [1984] [fiduciary relationship created when insurance company is called on to provide a defense to its insured].) But those instances are the exception rather than the rule (see, Goshen v Mutual Life Ins. Co., 1997 WL 710669, 1997 NY Misc LEXIS 486 [Sup Ct, NY County, Oct. 21, 1997, Shainswit, J.], affd 259 AD2d 360 [1st Dept 1999], lv granted 93 NY2d 809 [1999]; Gaidon v Guardian Life Ins. Co., 255 AD2d 101 [1st Dept 1998], lv granted 93 NY2d 809 [1999]). Plaintiff herein has failed to allege facts or circumstances which would suggest that any relationship evolved out of the ordinary arm’s length relationship created by the payment of premiums to MetLife in return for a policy of insurance, which might take the present action out of the rule of the cases of ancient, yet venerable vintage, such as Uhlman v New York Life Ins. Co. (supra). Thus, neither plaintiffs second cause of action for breach of fiduciary duty, nor her fourth, seeking an accounting, states a cause of action, and must be dismissed. (See, Adam v Cutner & Rathkopf, 238 AD2d 234 [1st Dept 1997] [the right to an accounting is premised on the existence of a confidential or fiduciary relationship].)
Further, because no fiduciary relationship exists between plaintiff and MetLife, plaintiff will not be heard to plead, as she has attempted to do, that MetLife is estopped from pleading the expiration of any applicable Statute of Limitations due to its alleged failure to inform its whole life policyholders of its allegedly wrongful act. (See, Gleason v Spota, 194 AD2d 764 [2d Dept 1993] [where concealment without actual misrepresentation is alleged as a ground for estoppel, plaintiff must demonstrate a fiduciary relationship which imposed a duty on the defendant to inform plaintiff of facts underlying the claim].) Insofar as plaintiff has attempted to allege “affirmative misstatements in [MetLife’s] annual publicly filed responses to insurance regulators” (complaint ¶ 29), those “affirmative misstatements” were allegedly made when MetLife “failed to disclose that assets were allocated to reduce the monies available to pay dividends on whole life policies” (ibid, [emphasis supplied]). These conclusory allegations, which still only claim fraud by omission, cannot sustain an estoppel claim to evade the bar of the Statute of Limitations.
*636 With the foregoing in mind, plaintiff’s third cause of action, based on claimed violations of General Business Law § 349, must be dismissed because of the expiration of the three-year Statute of Limitations (CPLR 214 [2]; Avdon Capitol Corp. v Nationwide Mut. Fire Ins. Co., 240 AD2d 353 [2d Dept 1997]). All of the acts complained of occurred more than three years prior to the commencement of the instant action. Plaintiff cannot rely on her conclusory allegation that the dates of MetLife’s alleged wrongdoing are “presently unknown to plaintiff,” but include “at least the period 1989-1992” (complaint ¶ 2) to extend the statute.
It remains to be determined whether plaintiff has alleged a cause of action for breach of contract, based on MetLife’s alleged decisions in 1989 through 1992 to replace certain high-yielding, lucrative investments, which allegedly had been purchased with premiums supplied by plaintiff and other whole life policyholders, as well as the surplus generated thereby, with investments of lesser quality which had been purchased with premiums provided by MetLife’s annuity policyholders, so as to effectively decrease the dividend which should have been realized on plaintiffs premiums, in favor of other insureds. Plaintiff maintains that MetLife contracted “to use the earnings from the investment of the policyholders’ premium payments exclusively for their benefit, and to allocate income and expenses fairly and equitably in determining those earnings” (complaint ¶ 35), but that it failed to do this when it reallocated assets and surplus to the pool of earnings attributable to its annuity policyholders.
Insurance Law § 4231 (a) (1) requires that “[e]xcept as herein otherwise provided, every domestic life insurance company shall ascertain and distribute annually * * * the proportion of any surplus accruing upon every participating insurance policy.” Section 4231 (a) (3) specifies that the company shall, after setting aside from surplus certain costs and expenses, “apportion the remainder of such earnings, if any, derived from participating policies and contracts, equitably to all policies or contracts entitled to share therein during the full dividend year.”
MetLife admits that it has a statutory duty to treat its policyholders equitably, but counters that this creates “no obligation to allocate specific income to any particular policyholder or line of business.” (Defendant’s mem of law, at 2.) Further, MetLife contends that plaintiff cannot allege the requisite bad faith or abuse of discretion necessary to mount a *637 successful challenge to MetLife’s management of its investments and dividends from 1989 to 1992.
In Rebbert v New England Mut. Life Ins. Co. (Sup Ct, NY County, Apr. 9, 1998, Cahn, J., index No. 600457/97, affd on opn below 262 AD2d 39 [1st Dept 1999]), this court discussed the quantum of discretion which a mutual insurance company has in the allocation of dividends, finding as follows: “[t]he method of apportionment of dividends is a matter of discretion vested in the company’s board of directors and is considered prima facie equitable. Barnett v Metropolitan Life Insurance Company, 258 App Div 241, affd 285 NY 627. Only a showing of wrongdoing or mistake on the part of the board will serve to overrule its apportionment of the divisible surplus. Rhine v New York Life Insurance Company, 273 NY 1, 6.”
In Rebbert (supra), this court concluded that dividends apportioned according to the “contribution” method of apportionment, that is, in proportion to the amount which each class of insurance contributed to the over-all surplus, was prima facie equitable and fair, so as to preclude any action for breach of contract based on any policyholder’s failure to receive dividends in a particular year, if the type of policy which he held failed to contribute to the over-all surplus.
In the present action, it is not alleged that MetLife failed to pay any dividend at all (as in Rebbert, supra) but that MetLife paid a dividend to plaintiff, and others similarly situated, which did not reflect the actual earnings potential of the amounts which MetLife whole life policies had contributed to its surplus. It is alleged, essentially, that MetLife purposely undermined the ability of its whole life line of business to earn a better dividend in order to favor another line of business.
MetLife, relying on Insurance Department Regulations (11 NYCRR) § 91.1, argues that New York vests broad discretion in an insurance company’s management to allocate income and expenses as it sees fit. This regulation states as follows: “Equitable allocation of income and expenses of a life insurer is the responsibility of its management. Its exercise of such responsibility, while shaped by appropriate consideration of such factors as size, mode of operation and classes of business written by the insurer, must accord with sound accounting practice and comply with Insurance Law requirements that holders of insurance policies and annuity contracts be treated equitably (§§ 204, 209, 216, 221, 223 and 226) and that insurance policies and annuity contracts be self-supporting on reasonable assumptions as to mortality, morbidity, interest and *638 expense (§§213 and 221).” (11 NYCRR 91.1 [a].) MetLife also relies heavily on the “business judgment rule,” which shields from judicial scrutiny most decisions of a corporate Board of Directors. (See, Auerbach v Bennett, 47 NY2d 619 [1979].)
On a motion to dismiss pursuant to CPLR 3211 (a) (7), the court must take the factual allegations of the complaint as true, and resolve all inferences which reasonably flow therefrom in favor of the pleader. (Cron v Hargro Fabrics, 91 NY2d 362 [1998].) The court’s function on a CPLR 3211 motion, such as this one, is much more limited than its function on a motion for summary judgment (CPLR 3212).
Neither the business judgment rule, the New York Insurance Law, nor the rule of Rhine v New York Life Ins. Co. (273 NY 1, supra) requires this court to find, as a matter of law on this motion to dismiss, that MetLife’s alleged redistribution of assets and surplus, so as to manipulate the amount of surplus which the premiums from any single class of business generated in a given year, is prima facie equitable. The court notes that MetLife has failed to rebut plaintiffs claim, here necessarily held to be true, that the premiums MetLife received from each separate class of insurance create separate “pools” of assets and earnings, which contribute to the over-all surplus in proportion to their earning capacities. These allegations preclude any finding on a preanswer motion, that MetLife’s management of its funds was prima facie equitable, or that plaintiff has failed to allege wrongdoing on MetLife’s part in the management of its surplus. Consequently, the action may proceed on a theory of breach of contract, for MetLife’s alleged wrongful manipulation of its allocatable surplus.[2]
Plaintiffs claim is limited by the Statute of Limitations. The Statute of Limitations on an action for breach of contract is six years, measured from the date of the breach, regardless of when the damage is felt. (CPLR 213 [2]; Ely-Cruikshank Co. v Bank of Montreal, 81 NY2d 399 [1993].) Consequently, since plaintiff complains only of acts which occurred from 1989 until, presumably, the end of 1992, she can only recover for damages caused by MetLife’s acts between June and December 1992, a *639 six-month period. Plaintiff is wrong when she argues that the present action is an example of continuing contractual breaches, in which new, timely claims continue to arise. (See, e.g., Airco Alloys Div. v Niagara Mohawk Power Corp., 76 AD2d 68 [4th Dept 1980].) The acts of which plaintiff complains are alleged to have occurred during a discrete period of time, and it is irrelevant for purposes of the Statute of Limitations that plaintiff may continue to be damaged as a result of those acts. (Ely-Cruikshank Co. v Bank of Montreal, supra.)
Accordingly, it is ordered that the motion to dismiss is granted only as to the dismissal of the second, third and fourth causes of action, and so much of the first cause of action as alleges acts occurring prior to June 1992, and is otherwise denied, and those causes of action and allegations are dismissed; and it is further ordered that the remainder of the action shall continue.

. Plaintiff argues that the question of whether a fiduciary relationship existed between the parties is a factual one, which should be left to a jury to decide. In so arguing, plaintiff places her reliance on Dornberger v Metropolitan Life Ins. Co. (961 F Supp 506 [SD NY 1997]), in which the District Court negated the import of those “cases of ancient vintage,” such as Uhlman (supra) and Equitable Life Assur. (supra), and held that “under the right circumstances, the relationship between insurer and insured may be imbued with elements of trust and confidence which render the relationship more than a mere arm’s-length association.” (Dornberger v Metropolitan Life Ins. Co., supra, at 546.) The Federal court based its decision whether New York courts would continue to follow Uhlman (supra) on a decision rendered by a New York trial court in Meagher v Metropolitan Life Ins. Co. (119 Misc 2d 615 [Sup Ct, Monroe County 1983]). However, Uhlman has been cited with approval in recent cases such as Methodist Hosp. v State Ins. *635 Fund, (supra) and Mark Patterson, Inc. v Bowie (237 AD2d 184 [1st Dept 1997]). It is apparently still binding.

. In so finding, this court is not adopting plaintiffs argument that the so-called “Armstrong Report” of 1906 (Report of Joint Comm of NY Senate and Assembly Appointed to Investigate Affairs of Life Insurance Companies, 1906 NY Assembly Doc No. 41), and the enactment of the predecessor statute to Insurance Law § 4321, served to override the deference which courts had traditionally accorded to an insurer’s broad discretion to determine the allocation of its surplus to its policyholders, in such cases as Uhlman v New York Life Ins. Co. (109 NY 421, supra).