Agnes L. McCormack, Respondent, *v*. Security Mutual Life Insurance Company, Appellant.

Insurance (life) — lapse of policy by failure of insured to pay premium — validity of notice of forfeiture sent by insurer — renewal of lapsed policy — requirement that insured must be in good health at time of renewal — when notice to local agents of insurance company that insured was not in good health not notice to company — when recovery on lapsed policy limited to cash surrender value.

1. The law of imputed notice has its basis in the presumption that an agent will perform his duty.  The presumption is not available for the protection of a wrongdoer who had no reason to expect, and did not intend that there should be, a revelation of the truth.

2. Plaintiff, who was the beneficiary under a lapsed policy on the life of her husband, made a written application in his name for its reinstatement, wherein she declared that her husband was in sound health and free from any symptoms of disease.  The trial court found that such statements were false and were known by the plaintiff to be false and were made for the purpose of deceiving the defendant, which would have refused the application if it had known the truth.  Plaintiff's claim is that a cashier in an office of the company, and a solicitor known as defendant's general field superintendent, who handed her a receipt for the past due premium reinstating the policy, knew the facts concerning her husband's condition and that this was knowledge on the part of defendant.  After the death of the insured on the discovery of the facts the company

disclaimed liability. In this action which was brought to enforce the policy it is also claimed that it had never lapsed and that there was no need of reinstatement. *Held*, that the notice mailed by defendant stating the amount of premium due, the place where it should be paid, the person to whom it was payable, and other requirements under section 92 of the Insurance Law (Cons. Laws, ch. 28) fairly satisfies the requirements of that section, and that the statement in such notice to the insured, "Unless said premium shall be paid on or before said date, the policy and all payments made thereon will become forfeited and void, except that this notice shall not affect any right to paid-up or extended insurance, or to 30 days' grace if provided for in the policy contract," was sufficient. (Ins. Law, §§ 88, 92.) Hence the policy had lapsed. (*Nederland Life Ins. Co.* v. *Meinert*, 199 U. S. 171, followed.)

3. Notice of the condition of the health of the insured to the soliciting agent and to the person designated as cashier was not notice to the defendant and it was not bound thereby. (*Butler* v. *Mich. Mut. Life Ins. Co.*, 184 N. Y. 337, followed.)

4. The provision in the policy that "after it shall have been in force one full year, provided any and all payments required from the insured shall be made on or before the date on which they become due, this policy shall be incontestable," is not applicable, since it had not been in force a full year after its reinstatement, at the time of the death of the insured.

5. There was no error in limiting the recovery to the cash surrender value of the policy. The assured did not demand a paid-up policy or extended insurance within six months following the forfeiture. There was an unpaid loan on this policy, and hence the table under which it might have become a paid-up policy became inapplicable.

*McCormack* v. *Security Mutual Life Ins. Co.*, 161 App. Div. 33, reversed.

(Argued March 13, 1917; decided April 17, 1917.)

Appeal from an order of the Appellate Division of the Supreme Court in the third judicial department, entered March 9, 1914, reversing a judgment nominally in favor of plaintiff but actually in favor of defendant, being only for an amount conceded by defendant to be due, entered upon a decision of the court at a Trial Term and granting a new trial.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Harvey D. Hinman* and *J. L. Gregory* for appellant. The decision of the Appellate Division overrode the contract between the parties, and, if followed upon the new trial, which was granted, would have resulted in the plaintiff's obtaining judgment without performance of the contract upon the part of the insured. (*N. L. Ins. Co.* v. *Meinert,* 199 U. S. 171; *Hook* v. *M. M. Life Ins. Co.,* 44 Misc. Rep. 478; 139 App. Div. 922; *Ætna Life Ins. Co.* v. *Moore,* 231 U. S. 543; *Prudential Ins. Co.* v. *Moore,* 231 U. S. 560; *Mutual Life Ins. Co.* v. *Hilton-Green,* 241 U. S. 613; *Conway* v. *P. M. L. Ins. Co.,* 140 N. Y. 79; 3 Cooley's Briefs on Ins. 2498, 2499; *McCollum* v. *Mutual Life Ins. Co.,* 55 Hun, 103; 124 N. Y. 642; *Clemans* v. *Supreme Assembly Royal Society of Good Fellows,* 131 N. Y. 485; *Barteau* v. *P. Mut. L. Ins. Co.,* 67 N. Y. 595; *Kenyon* v. *K. T. & M. Mut. Aid Assn.,* 122 N. Y. 247 at 257; *Jennings* v. *C. Co. Mut. Ins. Co.,* 2 Den. 75; *Levell* v. *Royal Arcanum,* 9 Misc. Rep. 257; *Gaines* v. *Fidelity & Casualty Co.,* 93 App. Div. 524; 111 App. Div. 386; 188 N. Y. 411.)

*Rollin B. Sanford* for respondent. The policy was never legally forfeited. (L. 1909, ch. 33, § 92; *Baxter* v. *Brooklyn L. Ins. Co.,* 119 N. Y. 450; *Phalen* v. *N. W. Ins. Co.,* 113 N. Y. 147; *Flint* v. *P. L. & T. Co.,* 157 App. Div. 885; 215 N. Y. 254; *Greenwald* v. *U. T. Ins. Assn.,* 18 Misc. Rep. 91; *Dingley* v. *N. Y. L. Ins. Co.,* 93 Fed. Rep. 153; *N. L. Ins. Co.* v. *Meinert,* 199 U. S. 171; *Schad* v. *S. M. L. Assn.,* 11 App. Div. 487; 155 N. Y. 640; *Merriman* v. *K. M. B. Assn.,* 18 N. Y. Supp. 305; *McDougall* v. *P. S. I. A. Society,* 135 N. Y. 551.) If there had been a forfeiture the company would be estopped from claiming it. Whether the company itself with full knowledge reinstated the policy for good con-

29

sideration is clearly a question of fact. (*Rowley* v. *Empire Ins. Co.*, 36 N. Y. 550; *Wood* v. *Am. Fire Ins. Co.*, 149 N. Y. 382; *Robbins* v. *Springfield Fire Ins. Co.*, 149 N. Y. 477; *Benjamin* v. *Palatine Ins. Co.*, 80 App. Div. 260; 177 N. Y. 588; *McClelland* v. *Mutual Life Ins. Co.*, 151 App. Div. 264; *Ames* v. *Manhattan Life Ins. Co.*, 40 App. Div. 565; 167 N. Y. 584; *Stewart* v. *Union Mutual Life Ins. Co.*, 155 N. Y. 257; *Van Schaick* v. *Niagara Fire Ins. Co.*, 67 N. Y. 434; *Draper* v. *Oswego Fire Ins. Co.*, 190 N. Y. 12; *Bennett* v. *Buchan*, 76 N. Y. 386.) The policy is incontestable. (*Teeter* v. *U. L. Ins. Co.*, 159 N. Y. 411.) The renewal policy had been in force more than one full year from the date of its issuance, before the death of the insured. The incontestable clause prevents the company from setting up even fraud or breach of warranty. (*Wright* v. *Mutual Benefit Ins. Co.*, 118 N. Y. 237; *Smith* v. *People's Mutual Ins. Co.*, 64 Hun, 534; *Bates* v. *United Life Ins. Co.*, 68 Hun, 144; 142 N. Y. 677; *Teeter* v. *United Life Ins. Co.*, 159 N. Y. 411.) The trial court erred by awarding to plaintiff less than was due in any event. (*Myers* v. *King*, 48 Hun, 112; *Marson* v. *Boret*, 1 Den. 69; *Yeomans* v. *Bell*, 151 N. Y. 234.)

Cardozo, J. This is an action upon a policy of life insurance. The policy was issued in 1901 to John A. McCormack and was payable upon his death to the plaintiff, his wife. Premiums were due quarterly, but there was a period of thirty days grace. During this term of grace unpaid premiums bore interest at the yearly rate of five per cent. The assured made his payments promptly till December, 1910. He was then ill with a fatal malady which had made him helpless for years. His wife looked after his affairs. She had received on November 12, 1910, a notice which warned her that on December 12 a premium would be payable. The form of the notice is criticized as not conforming to the requirements of section 92

of the Insurance Law (Cons. Laws, ch. 28). We shall deal with that subject later. The wife made out a check in due season, but neglected to mail it, and on January 11, 1911, the period of grace expired. On February 13 the defendant wrote the assured that the policy had lapsed, and suggested that reinstatement might be allowed if there was satisfactory evidence of good health. This letter came from the defendant's main office in Binghamton and was received by the assured at his home in Albany. Investigation followed and led to the discovery of the unmailed check. The defendant had an agency in Albany, and the plaintiff went there and saw Miss Hearley, the cashier. We state the plaintiff's version of the interview. Miss Hearley told her that application for reinstatement might be made to the home office, and showed her a form for signature. It contained a warranty that the assured was in good health. The plaintiff said to Miss Hearley that she could not sign the application truthfully, and was told that the defendant had no other form. She took the form away and showed it to her husband. With his consent and in his name she signed it. It warrants and declares that the assured has not received or required the services or advice of any physician since the date of the last payment to the company, and further warrants and declares that he is, to the best of his knowledge and belief, in sound health and free from any symptoms of disease. Having signed this application, the plaintiff sent it to Miss Hearley, who forwarded it to Binghamton. The trial judge found that its statements were false and were known by the assured and by the plaintiff to be false, and were made for the purpose of deceiving the defendant and thereby procuring the reinstatement of the policy.

The application had the desired effect. It reached the defendant on February 18, 1911. It was accompanied by a check for the overdue premium. On February 20 the medical director, believing its statements to be true,

approved it. The defendant thereupon ordered the policy reinstated, and signed a receipt for the premium in default. The trial judge has found that the defendant would have refused reinstatement if it had known the truth.

A few days later the plaintiff received a telephone message from Miss Hearley to call at the Albany agency. She went there on February 26 or 27 and met Miss Hearley and one Andrews, who was known as the defendant's general field superintendent. His duty was to assist agents in securing business. He had nothing to do with the issuing of policies or the waiver of forfeitures. He had not been commissioned by the defendant to deliver its renewal receipt. Indeed, he had left Binghamton on February 15, before the request for reinstatement was signed. The testimony is conflicting in respect of his interview with the plaintiff. We give the plaintiff's version. He told her, she says, that the company had done her a great favor in reinstating so sick a man, and suggested that she take out another policy herself. This she refused to do. He then handed her the receipt for the past due premium. It is marked " Reinstated," and bears date as of the day when the premium fell due.

On January 1, 1912, the assured died. The proofs of death informed the company that he had been ill for many years. This was its first notice that the application for reinstatement was false, unless it be chargeable with the knowledge of Miss Hearley or Mr. Andrews. Upon discovery of the truth, it announced its rescission of the contract. It tendered back all premiums received since December 12, 1910. It tendered also the surrender value of the policy less the amount of a loan which it had made to the assured.

On the defendant's disclaimer of liability, this action followed. The complaint demands judgment for the amount of the policy after deducting the loan, and also for an accounting as to dividends and accumulations. There

was, however, no occasion for an accounting in equity
(*Uhlman* v. *N. Y. Life Ins. Co.*, 109 N. Y. 421; *Greeff*
v. *Equitable Life Assur. Socy. of U. S.*, 160 N. Y. 19;
*Equitable Life Assur. Socy. of U. S.* v. *Brown*, 213 U. S.
25). The right of action was strictly legal. At the close of
the trial, both sides moved for the direction of a verdict.
This was an implied consent that the issues be deter-
mined by the judge.    The judge reserved decision, and
in the meantime took a special verdict upon two ques-
tions, and two only.   The questions submitted to the jury
were: "Did Mr. Andrews at the time of his interview
with the plaintiff, in February, 1911. understand the
condition of health of Mr. McCormack? Did Miss Hear-
ley at that time and prior thereto understand the condi-
tion of health of Mr. McCormack?" The jury answered
both questions "yes." The judge then took under advise-
ment the motions for the direction of a verdict upon
which decision had been reserved. He announced his
decision in the form of findings. The special verdict he
disregarded as immaterial. He held that any knowledge
of Miss Hearley and Mr. Andrews was not the knowledge
of the company. The other issues he decided in favor of
the defendant. The contract of reinstatement was held
to have been procured by fraud, and the recovery was
limited to $120, the surrender value of the policy after
charging the plaintiff with the unpaid loan and credit-
ing her with premiums paid after December, 1910. If
there were any irregularities of practice in the form of
trial and decision, they were waived by acquiescence. We
make no attempt to consider them.   There was an appeal
by the plaintiff to the Appellate Division.   That court
reversed the judgment and held that at the death of the
assured the policy was in force. The order for a new trial
is now before us for review.

The plaintiff insists that the policy never lapsed, and
that there was no need of reinstatement. The argument
is that the defendant did not comply with section 92 of

the Insurance Law (Cons. Laws, ch. 28). That section forbids the forfeiture of such a policy without notice within a prescribed time of the amount of the premium, the place where it shall be paid, and the person to whom it is payable. The defendant mailed a notice which fairly satisfies those requirements. To quote it at length is unnecessary. It will be found in the opinion of the Appellate Division (161 App. Div. 33, 35). But there are still other requirements which are said to have been neglected. "The notice shall also state that unless such premium * * * then due, shall be paid to the corporation, or to the duly appointed agent or person authorized to collect such premium by or before the day it falls due, the policy and all payments thereon will become forfeited and void except as to the right to a surrender value or paid-up policy as in this chapter provided." On that head the defendant's notice had this to say: "Unless said premium shall be paid on or before said date, the policy and all payments made thereon will become forfeited and void, except that this notice shall not affect any right to paid-up or extended insurance, or to 30 days' grace, if provided for in the policy contract." This statement has been criticised in two particulars. It is said that the reference to thirty days grace introduces an element of uncertainty. We think the criticism is answered by *Nederland Life Ins. Co., Ltd.,* v. *Meinert* (199 U. S. 171). There was a period of grace which made it proper to adapt the language of the statute to the peculiar provisions of this policy. What form of words would best attain that end was, of necessity, to be determined by the insurer, and in doing that it had a reasonable range of choice (*McDougall* v. *Provident S. L. A. Socy.,* 135 N. Y. 551, 556; *Flint* v. *Provident L. & T. Co.,* 215 N. Y. 254, 258). The choice which it made involves no sacrifice of substance. There is a suggestion, however, of still another departure from the statute. The statute speaks of a notice that the policy and all payments made thereon

will become forfeited and void "except as to the right to a surrender value or paid-up policy as in this chapter provided." The notice says that the policy and all payments made thereon will become forfeited and void "except that this notice shall not affect any right to paid-up or extended insurance." We are told that there should have been some mention, not only of the paid-up or extended insurance, but also of a surrender value. To this criticism there are two answers. In the first place, the purpose of the notice is to spur the assured to diligence. An omission to mention the privileges that remain exempt from forfeiture can only strengthen the stimulus. We cannot say with reason that a statement of such exceptions is of the substance of the notice. Here again the reasoning of the Supreme Court in *Nederland L. Ins. Co., Ltd.,* v. *Meinert* (*supra,* at p. 180) is pertinent and convincing. But another answer is that the statute speaks of a surrender value or paid-up policy "as in this chapter provided." The provisions referred to are those of section 88 of the Insurance Law. Under that section, policies issued like the one in suit before January 1, 1907, have different privileges from later policies. Their surrender within a prescribed time after default gives the assured a right either to a paid-up policy or to extended insurance, and nothing else (Ins. Law, § 88). As applied to this policy, the notice does in truth enumerate all the statutory exceptions. Statute and notice must receive a construction that will prevent their becoming a trap either to insurer or to assured (*Nederland Life Ins. Co., Ltd.,* v. *Meinert, supra*). Everything of substance must be stated (*Flint* v. *Provident L. & T. Co., supra*), but there is no requirement of literal adherence to one invariable form.

The notice being adequate, there was need of reinstatement. The reinstatement was procured by false representations and warranties. Unless a forfeiture has been waived, the contract will not stand. We are told that the truth was known to Miss Hearley and Mr. Andrews;

that their knowledge is to be imputed to the company; and that from this a waiver follows. False representations and broken warranties are not so easily repaired. Neither Miss Hearley nor Mr. Andrews had power to waive forfeitures directly (*Quinlan* v. *Providence W. Ins. Co.*, 133 N. Y. 356). That is substantially conceded. If not conceded, it is established by the policy, which withholds such powers from the agents, and by repeated notices which restrict the power of waiver to enumerated officers. The plaintiff seeks to escape the difficulty through the rule of constructive notice. The argument is that what is known to an agent must be presumed to be known to the principal, and that reinstatement with knowledge imports a waiver by the company itself. But this is not a case where the presumption of knowledge is permissible. The defendant attempted to protect itself from such a presumption by providing in the application for the policy that no statement made to any agent should be admissible in evidence against the company or binding upon it unless actually written in the application over the signature of the applicant (*Chase* v. *Hamilton Ins. Co.*, 20 N. Y. 52; *Ætna Life Ins. Co.* v. *Moore*, 231 U. S. 543, 559). The letter of that provision may not reach an application for reinstatement, yet it emphasizes the duty of the assured to scrutinize an agent's powers. There was no genuine attempt here to counteract the fraud by frank disclosure of the truth. Notice to Miss Hearley was not notice to the principal, because she was charged with no duty in respect of the issuing of policies, their reinstatement, or the waiver of conditions. Notice to Mr. Andrews was not notice to the principal and for like reasons. Indeed, at the time of his interview with the plaintiff the premium had already been accepted, the forfeiture had thus been waived, and reinstatement was an accomplished fact. To this we may add that he is not proved to have had any knowledge of the fraud. He knew that the assured was sick, but that in itself was of no significance.

For all that he is proved to have known the application for reinstatement may have stated the whole truth. Whatever the extent of his knowledge, there is no evidence that it reached the company. Stress is laid upon his statement on cross-examination that if he had heard of a fraud, he would have felt himself under a duty to report it. The question is not what he may have thought that in fair dealing he ought to do. The question is what he was employed to do. Loyalty to an employer must often move an agent to service foreign to his agency. If the nature of the employment, and not merely the agent's sense of fitness, imposed a duty of disclosure, the plaintiff has not proved it.

In these circumstances our decision in *Butler* v. *Mich. Mut. Life Ins. Co.* (184 N. Y. 337) is controlling. We held there that false statements made in an application for a policy were not nullified because a soliciting agent had knowledge of the truth. We said that inquiries as to such matters lay beyond the scope of his duties and functions. If he had been authorized " to effect insurance and issue policies," a different question would have been before us (*Butler* v. *Mich. Mut. L. I. Co.*, *supra*, at p. 341; *McClelland* v. *Mut. L. Ins. Co.*, 217 N. Y. 336). Even in such circumstances we have left open the question whether waiver may be inferred where the assured has been guilty of a fraud (*Kenyon* v. *K. T. & M. M. Aid Assn.*, 122 N. Y. 247, 257; *Clemans* v. *Supreme Assembly R. S. G. F.*, 131 N. Y. 485, 488). As it was, we applied the rule that notice to affect the principal must have been acquired by the agent in the course of his agency. In the case at bar there is the added circumstance, aside from the position of the agents, that the plaintiff did not intend or expect that they would communicate the truth. She signed a false warranty with instructions to transmit it. She gave no instructions to report her earlier words which would have made her application worthless. She must have known that it would be mere chance if they were

reported.   She cannot now insist that what was then but a chance must now be taken for a certainty.   The law of imputed notice has its basis in the presumption that an agent will perform his duty (*Henry* v. *Allen*, 151 N. Y. 1).   The presumption is not available for the protection of a wrongdoer who had no reason to expect, and did not intend that there should be, a revelation of the truth (*Mutual Life Ins. Co. of N. Y.* v. *Hilton-Green*, 241 U. S. 613, 623).

The plaintiff relies upon a provision of the policy which makes it incontestable under some conditions.   The provision is that "after it shall have been in force one full year, provided any and all payments required from the insured shall be made on or before the date on which they become due, this policy shall be incontestable." There is authority for the proposition that a reinstated policy is to be viewed as a new contract, and that it is incontestable for fraud or breach of warranty in the application for reinstatement after it has been in force as reinstated for a year (*Teeter* v. *United L. Ins. Assn.*, 159 N. Y. 411, 417; *G. W. L. Ins. Co.* v. *Snavely*, 206 Fed. Rep. 20).   The plaintiff argues that in computing the year, we must take the date of the renewal receipt, December 12, 1910.   We think the argument will not hold.   This policy was not reinstated on December 12, 1910.   At that date it had not even lapsed, for the term of grace had not expired.   It lapsed on January 11, 1911, and was reinstated on or about February 23, 1911.   The assured died within the year.

There was no error in limiting the recovery to the cash surrender value.   The assured did not demand a paid-up policy or extended insurance within six months following the forfeiture.   There is, it is true, a provision in the contract, that if no method of settlement is selected "within the six months specified, then this policy shall automatically become a paid-up policy for the amount stated in the table below, for the end of the last year for which

complete annual premiums have been paid, provided there be no unpaid loan thereon." There was an unpaid loan on this policy, and hence the table became inapplicable (*Taylor* v. *N. Y. Life Ins. Co.*, 197 N. Y. 324, 330). The plaintiff asks us to deduct the loan from the amount stated in the table, and give her a paid-up policy for the residue. To do this would be in effect to give her the cash surrender value and a paid-up policy at the same time. That is not the contract.

The order of the Appellate Division should be reversed, and the judgment of the Trial Term affirmed, with costs in the Appellate Division and in this court.

HISCOCK, Ch. J., COLLIN, POUND, CRANE and ANDREWS, JJ., concur; CUDDEBACK, J., absent.

Order reversed, etc.