Hillsborough, }
March 3, 1936. }

MARY J. LEVESQUE & a.

*v.*

METROPOLITAN LIFE INSURANCE COMPANY.

*Irving E. Forbes* and *Doyle & Doyle* (*Mr. Paul J. Doyle* orally), for the plaintiffs.

*Wyman, Starr, Booth, Wadleigh & Langdell* (*Mr. Booth* orally), for the defendant.

WOODBURY, J. On the application for reinstatement, underneath the space provided for the questions and their answers referred to above, and over the signature of the insured, appears the following: "I hereby certify that the foregoing statements and answers are correct, and wholly true and have been made by me to induce the Metropolitan Life Insurance Company to reinstate the above policy on my life, which policy lapsed for the non-payment of the premium due . . .; and I agree that if said Company shall grant such reinstatement the same shall be deemed to be based exclusively upon the representations contained in this request and upon the express condition that if the foregoing statements be in any respect untrue said Company shall, for a period of two years from the date of such reinstatement, be under no liability by reason of the attempted reinstatement of the policy, except that the Company shall return to the insured or his personal representative all premiums paid since the date of said reinstatement."

In spite of the admitted falsity of the answers to the questions con-

tained in the application for reinstatement and in spite of the admitted genuineness of the insured's signature thereto, the plaintiffs seek to charge the defendant for the face amount of the policy.   They contend that the defendant's agent was negligent in not discovering the true state of the insured's health at the time when the application was signed, and that this negligence prevents the defendant from relying upon the provisions of the above certificate as a defence.

In support of their position they produced evidence at the trial to the effect that an agent for the defendant called at the insured's home during the morning of February 18, 1932, and, finding the insured away, spoke to his wife, the plaintiff Mary. Her version of their conversation is as follows: "He says 'I have some paper for Mr. Levesque to sign.'   He says 'He is well and working?'   I says 'Yes.'   He says 'What doing?'   I says 'Pulling over.'   'Well,' he says, 'when will he be home?'   I says 'Noon time; you come back at noon time.'   So he did come back."   She then went on to testify that when the agent returned at noon he had the application already filled out, that he made no other inquiries concerning the insured's present health or past medical history, and that the insured, who was illiterate, then signed the application without having it read to him.   There is no evidence that the insured was not given an opportunity to have the application read had he so desired or that any fraud of any kind was practiced upon him.

The defendant denies the plaintiffs' version of the circumstances surrounding the execution of the application for reinstatement.  It asserts that the questions therein contained were  read to the insured by its agent and that the answers were written in by that  agent in the presence of the insured and in conformity to the answers which he gave.

The verdict of the jury establishes, for the purposes of this opinion, not only the truth of the plaintiffs' version of the affair, but also that the defendant's agent was negligent in not asking the questions contained in the application in detail.   The issue presented, therefore, is whether or not this negligence estops the defendant from relying upon the false answers as a defence.

In the first place, the insured's failure to discover the provisions of the application for reinstatement which he signed, there being no evidence of fraud practiced upon him, affords no legal ground for avoiding or nullifying its conditions.  *Karp* v. *Insurance  Co.*, 86 N. H. 124.   And the fact that the signer was illiterate does not alter the situation.   *Lauze* v. *Insurance Co.*, 74 N. H. 334; *Duval* v. *Insurance Co.*, 82 N. H. 543, 553.

Since it definitely appears that the truth of the statements of fact contained in that application was made a condition precedent to the reinstatement of the policy, and since the statements therein contained were in fact false, absence of liability would clearly follow unless there are "countervailing considerations of controling force." *Karp* v. *Insurance Co., supra.*

The plaintiffs contend that negligence on the part of the defendant's agent in not discovering the true state of the insured's health is a sufficient "countervailing consideration" to support a verdict for them under the rule established in *Domocaris* v. *Insurance Co.*, 81 N. H. 177, and *Bilodeau* v. *Insurance Co.*, 84 N. H. 405. Those cases are not in point. In both of them the agent had actual knowledge of the true state of affairs, and falsely and fraudulently misrepresented the situation to both the insured and the insurer. Such is not here the case.

The defendant relies upon the *Karp* case cited above. In that case the defendant's agent was negligent, but his negligence was regarded as immaterial because the insured was not aware of her bad health and so no amount of inquiry from her would have disclosed the true situation. Certain language in that case, however, (*p.* 126) clearly indicates that mere negligence is not a "countervailing consideration of controling force" sufficient to invoke the doctrine of the *Domocaris* and *Bilodeau* cases. In fact, it is there expressly said that the rule of those cases "involves a departure from common-law doctrines of agency, and its utility as an instrument for the accomplishment of substantial justice is extremely dubious," and further, that "we should hesitate to extend that rule so as to cover any new situation."

For the purpose of the case before us it suffices to say that, in conformity with the above quoted *dicta,* we will not extend the rule of the *Domocaris* and *Bilodeau* cases to this situation where there has been mere negligence. It therefore follows that the defendant is not estopped from setting up the defence of non-compliance with the conditions precedent to the reinstatement of the policy, and since those conditions were not complied with, the defendant is entitled to prevail. For cases reaching this result see *McCormack* v. *Insurance Co.*, 220 N. Y. 447; *Axelroad* v. *Insurance Co.*, 267 N. Y. 437; *Perkins* v. *Insurance Co.*, 69 Fed. (2d) 218.

Furthermore, if there had been no negligence the true facts would have been discovered and there would have been no right to have the policy reinstated. It follows that the negligence of the defendant's agent is here immaterial.

Two other arguments for the plaintiffs remain to be considered.

Pointing to that clause in the policy which provides that it may be reinstated after lapse for non-payment of premiums, (under certain conditions which have been admittedly complied with) "upon the production of evidence of insurability satisfactory to the Company," the plaintiffs argue that since it was found that only one general question as to the present health and employment of the insured was asked when the application was signed, "the defendant company,—acting through its agents, did whatever they saw fit to do as to the insurability of the insured, and were satisfied with what they learned." This argument loses sight of the important fact that the only evidence of insurability which the company was willing to accept as satisfactory was that contained in the application for reinstatement, and further, that such evidence, to be satisfactory, must be in accord with the facts. It is so stipulated in the above certificate quoted from the application itself.

The further argument is made that the reinstatement of the policy reëstablished it in the same condition in which it was at the time of its lapse, and that at that time, by its provisions, it was incontestable for any reason other than the non-payment of premiums. From this the conclusion is sought to be drawn that, since all premiums have admittedly been paid, the company is without any defence. This argument begs the question. It is based upon the proposition that the policy was reinstated and that is the very question before us.

In view of the fact that the defendant's motions for nonsuit and directed verdict should have been granted its other exceptions do not require consideration.

In accordance with the agreement of counsel to the effect that the value of the policy as a lapsed one, plus premiums paid since the attempted reinstatement amounted to $790.28 as of December 20, 1933, and that this sum was due to the plaintiffs in any event, there must be

*Judgment for the plaintiffs for $790.28.*

All concurred.