ANNA M. MALNATI, as Ancillary Substituted Administratrix C. T. A., etc., of GERTRUDE MALNATI, Deceased, Plaintiff, *v.* METROPOLITAN LIFE INSURANCE COMPANY, Defendant.

Supreme Court, Trial Term, Queens County, December 16, 1937.

*Hector McG. Curren,* for the plaintiff.

*Henry C. Frey,* for the defendant.

HALLINAN, J. In this action to recover on a policy of life insurance, the defendant set up the defense of fraud and misrepresentation in that the insured in his application had willfully made certain false representations concerning his health, in reliance upon which the policy was issued.

The policy was issued on March 4, 1924, on the life of Louis Malnati. He died on August 24, 1925. This action was commenced on or about April 12, 1926, so that at the time of the commencement thereof more than two years had elapsed since the issuance of the policy, although less than two years had elapsed at the time the insured died.

The policy involved provided that it " shall be incontestable after it has been in force for a period of two years from its date of issue." Relying on this clause, the plaintiff moved, in June, 1926, for summary judgment, before Mr. Justice HAGARTY, then sitting in Special Term. This motion was granted on July 1, 1926, in an opinion reported in *Malnati* v. *Metropolitan Life Insurance Co.* (127 Misc. 674), wherein it was held that, since the defendant had

omitted in its "incontestability clause" the words "during the lifetime of the insured," as provided in section 101 of the Insurance Law (added by Laws of 1909, chap. 301, as amd. by Laws of 1921, chap. 407, since amd. by Laws of 1922, chap. 275, Laws of 1923, chap. 28), and since the action had been commenced at a time when the policy had been in force for more than two years, the period of incontestability had passed when the action was commenced and, therefore, the defense of fraud raised in that action was not available; that the defendant was not without remedy for the reason that it might have disclaimed the policy within the two-year period or brought an action within that time to annul it on the ground of fraud, neither of which was done.

The Appellate Division reversed the court below and denied summary judgment in an opinion reported *sub nom. McKenna* v. *Metropolitan Life Insurance Co.* (220 App. Div. 53), one justice dissenting. The plaintiff then appealed to the Court of Appeals, which dismissed the appeal, with costs (247 N. Y. 527).

The action was brought to trial before this court during the November, 1937, term, after an order substituting the party plaintiff and restoring the case to the calendar had been affirmed by the Appellate Division (*sub nom. Malnati* v. *Metropolitan Life Insurance Co.*, 252 App. Div. 782, Oct. 22, 1937).

It is the contention of the plaintiff that the Court of Appeals in *Kocak* v. *Metropolitan Life Ins. Co.*, decided on November 21, 1933 (263 N. Y. 518), has definitely settled the law concerning an incontestability clause precisely the same as the one in the policy involved herein, and that under that decision the defense of fraud and misrepresentation interposed by this defendant must fall as a matter of law. It is urged that, were this action before this court *de novo*, the plaintiff would be entitled to judgment on the authority of *Kocak* v. *Metropolitan Life Ins. Co.* (*supra*); that, nevertheless, the plaintiff is entitled to judgment because the Appellate Division did not establish any "law of the case" binding on this court when it reversed Special Term and denied summary judgment.

On the other hand, it was contended by the defendant that the Appellate Division did establish the "law of the case" when it denied summary judgment, which is binding upon the trial court, irrespective of the decision in *Kocak* v. *Metropolitan Life Ins. Co.* (*supra*). It argues that the reversal of Special Term and the denial of summary judgment established that the defendant could avail itself of the defense of fraud and misrepresentation in the face of the incontestability clause in the policy.

What the Appellate Division, therefore, held or intended to hold when it reversed the order of Special Term granting summary judgment is squarely before this court for determination. If it held that the affirmative defense in the answer was sufficient as a matter of law, irrespective of the incontestability clause, that decision is conclusive and binding upon the trial court before which the issues are brought for final determination; for then it is necessary for that court to determine only whether the defendant's evidence fairly establishes the defense pleaded.

If so interpreted, the decision of the Appellate Division is, of course, the authority for the Trial Term, which should be followed in any event. " A trial court to which an action has been remitted for trial has no jurisdiction to review, even for apparent errors, matters decided by its superior appellate court." (*Hornstein* v. *Podwitz*, 229 App. Div. 167, 169.) The Court of Appeals, however, is not bound by the decision of the Appellate Division sustaining the sufficiency of a complaint, so as to prevent it, upon a subsequent appeal from the final judgment, from reviewing the intermediate order. (*Hornstein* v. *Podwitz*, 254 N. Y. 443.)

The plaintiff, however, contends that, even if the decision of the Appellate Division is interpreted as holding that the affirmative defense of fraud and misrepresentation is sufficient, irrespective of the incontestability clause, it is, nevertheless, the duty of this court to follow the decision of the Court of Appeals in the *Kocak* case, since that ruling is decisive and governs the issue involved, and the Appellate Division, in the event of an appeal, would be bound to reverse itself. In support of that contention the plaintiff cites *United States Mortgage & Trust Co.* v. *Ruggles* (232 App. Div. 9; affd., 258 N. Y. 32), where the court said (per FINCH, J.): " The Court of Appeals having decided that a decision upon which this court formerly relied was erroneous, this court should be guided accordingly upon a second appeal and reverse its previous holding, rather than compel the parties to undergo the loss of time and expense incidental to an appeal to the Court of Appeals, which could only result in the reversal of a judgment in favor of the plaintiff in so far as this question is concerned."

By a parity of reasoning it is urged by the plaintiff that if, under the above-cited decision, " it be the duty of the Appellate Division to reverse its previous holding rather than compel the parties to appeal to the Court of Appeals, it is likewise the duty of the trial court, confronted with the same situation, to also apply the prevailing law and not compel further appeal which can only result, as Mr. Justice FINCH says, ' in a reversal of judgment.' "

With this contention I cannot agree. While the Appellate Division may reverse its *own* previous holding, it is inappropriate for a trial court to reverse its superior court in the very action in which that court made its ruling, since to do so would prevent the orderly administration of justice.

In the case at bar, however, it is not necessary, in order to find for the plaintiff, for the trial court to go as far as the plaintiff urges it should. A careful consideration of the opinion of the Appellate Division herein leads this court to the conclusion that the Appellate Division did not intend, when it reversed the lower court's order granting summary judgment, to finally interpret the incontestability clause involved and to pass upon the sufficiency of the defense as a matter of law, but that court intended that the action should be tried, and all issues, whether of law or fact, then determined.

The Appellate Division (220 App. Div. 53), after reviewing cases pro and con, strongly indicated its doubt as to the meaning of the incontestability clause and its intention not to commit itself definitely, when it concluded its opinion as follows: " Before the enactment of the amendment of 1921 the language of the standard incontestable clause was ambiguous. Had the company used the language prescribed by the amendment the ambiguity would have been overcome and it would have been plain that before a policy could become incontestable it must have been in force for two years and the insured must have been alive during all of the two years. The company, however, chose to continue the ambiguity by ignoring the mandate of the amendment. The language of the clause being of the company's own selection, the doubt arising should ordinarily be resolved against it. (*Mutual Life Ins. Co.* v. *Hurni Packing Co.*, 263 U. S. 167.) But in view of the *McCormack* (220 N. Y. 447) and other New York cases where the incontestable clause paralleled the clause in the instant case, I fail to see how we can say as matter of law that under the clause in question the policy outlived the death of the insured; and we cannot sustain the summary judgment unless we so hold. I think the defendant insurance company has shown that it has an ' arguable defense ' " (p. 59).

Later, upon reargument (219 App. Div. 838) the court said: " The direction in the decision, that defendant was entitled to judgment, was inserted through inadvertence, *the intention of this court being that the action should be tried.*"

Mr. Justice UNTERMYER had occasion to comment upon the opinion of the Appellate Division in the case at bar when, sitting in Special Term, Part III, of the New York County Supreme

Court, in *Zeidenstein* v. *Metropolitan Life Ins. Co.* (N. Y. L. J. April 6, 1933, p. 2042), when he said: "The Appellate Division of the Second Department in *McKenna* v. *Metropolitan Life Insurance Company* (220 App. Div. 53) appears not to have committed itself definitely to either view. In that case a similar provision was held to be of such doubtful import that the court declined to undertake its interpretation on a motion for summary judgment, stating (page 59) that the defendant had shown a sufficiently ' arguable defense ' to require the denial of the motion."

Mr. Justice McNAMEE, writing for the Appellate Division, Third Department, in *Kocak* v. *Metropolitan Life Ins. Co.* (237 App. Div. 780, 783; affd. without opinion, 263 N. Y. 518), said, concerning the opinion of the Appellate Division herein, as follows: "Reliance also is placed by the appellant on the case of *Malnati* v. *Metropolitan Life Ins. Co.* (127 Misc. 674; *sub nom. McKenna* v. *Metropolitan Life Ins. Co.*, 220 App. Div. 53). The form of the incontestability clause in that case was the same as that now before the court. That case reversed the Special Term with reluctance, ' in view of the *McCormack* and other New York cases where the incontestable clause paralleled the clause in the instant case.' *It is evident that the decision in the McKenna case was controlled by the view taken of the McCormack case (supra)*, the presiding justice dissenting with an opinion." (Italics mine.)

The opinion of Mr. Justice McNAMEE *distinguished* the *McCormack* case. He said: "The appellant urges that the Court of Appeals has decided that a policy is no longer in force after the death of the insured, and that a contest may be interposed if the insured died after the incontestability period. (*McCormack* v. *Security Mutual Life Ins. Co.*, 220 N. Y. 447.) We are unable to read that case with the result claimed; nor do we regard it as an authority for either proposition. While the incontestability clause in that case is, in principle, the same as the clause here, it does not appear that those propositions were litigated there."

The original motion for summary judgment herein was made upon the ground solely that " the answer is sham," and did not specifically attack the legal sufficiency of the affirmative defense. In stating that the defendant " has shown that it has an ' arguable defense,' " the court did not necessarily decide that the defense was good in law. All it decided was that the defendant should be allowed to defend because the facts adduced in the application constituted, in its opinion, in view of the conflict of decisions, an " arguable defense," or, as put by the Court of Appeals in *General Investment Co.* v. *Interborough R. T. Co.* (235 N. Y. 133, 139), " an apparent defense."

The provisions in our civil practice for summary judgment are founded upon similar provisions in the English practice, which have been in operation since 1855. Some light, therefore, on the meaning of an " arguable defense " may be shed by *The Yearly Practice* for 1921, wherein some of the English cases were digested, at page 131, as follows:

" It is not necessary for the defendant to demonstrate that he has a clear and absolute defense. It is sufficient for him to show ' that there is a *bona fide* defense — not necessarily a good one, and not necessarily a right one ' (*Yorkshire Banking Co.* v. *Beatson,* [1879] 4 C. P. D. 213, per Lord COLERIDGE, L. J., at p. 215), but still a defense that cannot be seen to be a sham. (*Manger* v. *Cash,* [1889] 5 T. L. R. 271.)

" So it is sufficient for the defendant if he shows that he has a fair case for defense (*Saw* v. *Hakin,* [1888] 5 T. L. R. 72), or fair grounds for setting up a defense (*Ironclad Co.* v. *Gardner,* [1887] 4 T. L. R. 18); or a fair right to defend (*Bowes* v. *Caustic Soda Co.,* [1893] 9 T. L. R. 328); or a fair probability of a defense (*Ward* v. *Plumbley,* [1890] 6 T. L. R. 198); or a ' plausible suggestion of a defense ' (*Dane* v. *Mortgage Insurance Corporation,* [1894] 1 Q. B. 54, per Lord ESHER, M. R., at p. 62); or if he shows facts which might constitute a defense (*Yorkshire Banking Co.* v. *Beatson, supra*); or from which he may plausibly argue that he has a defense (*Ray* v. *Barker,* [1879] 4 Ex. D. 284, per COTTON, L. J., at p. 284); * * * or which raise a plausible dispute (*Lynde* v. *Waithman,* [1895] 2 Q. B. 180, per Lord ESHER, M. R., at p. 184)."

All of which demonstrates that, in denying summary judgment because the defendant had shown an " arguable defense," the Appellate Division intended to make no final determination and left it to the trial court to resolve all issues.

As said by the Court of Appeals in *Gravenhorst* v. *Zimmerman* (236 N. Y. 22, at pp. 38, 39), where summary judgment was denied: " Under the circumstances one person may argue that as matter of law the assignor abandoned and lost the benefit of his rescission; another might think that such abandonment was a question of fact for the jury. But upon one proposition we are all agreed, and that is the primary one presented upon this appeal — the right to a summary judgment. *It never could have been, or in justice ought to have been, the intention of those who framed our Practice Act and rules thereunder that the decision of such a serious question as this should be flung off on a motion for summary judgment.* Whatever the final judgment may be the defendants were entitled to have the issue deliberately tried and their right to be heard in the usual manner of a trial protected." (Italics mine.)

This action was tried upon an agreed statement of facts in support whereof documentary proof consisting of the policy of insurance, the application, the proofs of death and the deposition of a physician taken by stipulation, were submitted. This deposition and the certificate of Dr. Wheeler establish the facts pleaded in the answer and denied by the insured in his application, that he had suffered from and been treated for pulmonary tuberculosis prior to the time the application was signed.

Nevertheless, the plaintiff is entitled to recover by reason of the incontestability clause contained in the policy of insurance, which provides that it " shall be incontestable after it has been in force for a period of two years from its date of issue." The policy was a contract between the insured and the defendant, and the incontestability clause was one of the inducements to the insured to make the contract. As said by Chief Judge CARDOZO in *Killian* v. *Metropolitan Life Ins. Co.* (251 N. Y. 44, 49): " The value of a clause declaring a policy incontestable lies to no slight degree in the definiteness of the protection accorded to the holder. The good that it promises is in part a state of mind. After the lapse of two years the insured is no longer to be harassed by the fear that the policy will be avoided by interested witnesses asserting in later days that there was a disclaimer long ago. After a like lapse the beneficiaries are no longer to be subjected to the risk of forfeiture through notices or warnings that may be hard to disprove when the insured is in his grave. Alike for insured and for beneficiaries, there is to be the peace of mind that is born of definiteness and certainty. The clause, in effect, if not in form, is a statute of limitations, established by convention, and like the statute is directed to remedies in court (*Wright* v. *Mut. Benefit Life Assn.*, 43 Hun, 61; affd., 118 N. Y. 237)."

The defendant could, under section 101 of the Insurance Law (*supra*), have included in its policy a standard incontestability clause " that the policy shall be incontestable after it has been in force during the lifetime of the insured, for a period of two years from its date of issue." But, instead, it omitted from the contract under consideration the words " during the lifetime of the insured." Had that phrase been included and the statutory provision followed, no doubt or ambiguity could have existed as to its meaning. Having, however, been omitted, whatever doubt and ambiguity may exist must be resolved against the defendant since it is responsible for the language in the contract. (*Janneck* v. *Metropolitan Life Ins. Co.*, 162 N. Y. 574; *Killian* v. *Metropolitan Life Ins. Co.*, supra; *Gerka* v. *Fidelity & Casualty Co.*, 251 N. Y. 51, 55; *Mutual Life Ins. Co. of New York* v. *Hurni Packing Co.*, 263 U. S. 167.)

The interpretation of an incontestability clause in the precise form as the one here involved was, upon a similar state of facts affecting the lapse of time since the issuance of the policy, finally determined by the Court of Appeals in *Kocak* v. *Metropolitan Life Ins. Co.* (263 N. Y. 518). That action was commenced on April 22, 1932, on a policy issued on October 23, 1929, the insured having died on March 5, 1931. So that in that case, as well as in the case at bar, the death occurred less than two years after the policy was issued, and the action brought more than two years thereafter. The defendant interposed the affirmative defense of fraud and misrepresentation in the application as to the health of the insured. A motion was made by the plaintiff for summary judgment upon the ground *that the defense alleged in the answer was insufficient in law upon the face thereof.* Special Term struck out the affirmative defense but otherwise denied the motion upon the ground that the denials in the defendant's answer raised issues putting the plaintiffs to their proof. (144 Misc. 422.) The Appellate Division unanimously affirmed (237 App. Div. 780) and held that the policy continued in force after the death of the insured, and that the contest thereof should have been commenced by the defendant insurance company within two years of the date of issuance of the policy. Appeal was taken, by permission, to the Court of Appeals, which affirmed, without opinion, and answered the questions which had been certified, as follows: " 1. Does that portion of the answer herein which was stricken out by the court below, state facts sufficient to constitute a defense to the cause of action alleged in the complaint? " Answered in the negative. " 2. Should the plaintiffs' motion to strike out the special defense contained in the paragraphs marked ' First ' to ' Fifth,' inclusive, of defendant's answer upon the ground that the said defense is insufficient in law upon the face thereof, have been granted? " Answered in the affirmative.

Accordingly, judgment is granted to the plaintiff as prayed for in the complaint, with costs.