WHITING v. FIDELITY MUT. LIFE INS. ASS'N OF PHILADEL-
PHIA, PA.

(Supreme Court, Appellate Division, First Department. April 22, 1910.)

1. INSURANCE (§ 183*)—SURRENDER OF POLICY—CASH BENEFIT—TERMINATION
OF POLICY.

A life policy providing that insured should pay a stated sum for the
mortality fund and a stated sum for an equation fund during the continu-
ance of the contract, and that, at the end of the probable life of in-
sured, he could surrender the policy and receive a cash disability benefit,
is not terminated at the end of the probable life of insured so as to au-
thorize the company to charge new premiums, where insured does not ex-
ercise the option to surrender, especially in view of a provision that, if
not surrendered at the end of insured's probable life, its equitable share
of the equation fund shall thereafter be confined to the insurance af-
forded under the policy.

[Ed. Note.—For other cases, see Insurance, Dec. Dig. § 183.*]

2. INSURANCE (§ 183*)—SURRENDER OF POLICY—PROBABLE LIFE OF INSURED—
INCREASE OF ANNUAL PREMIUMS.

The scheme of insurance as outlined in the policy was to charge the
insured so much for a mortality fund out of which death losses were to
be paid, and so much for an equation fund, a surplus fund which could
be used if there were a deficiency in the mortality fund due to the in-
creasing age of the member, and, if that became insufficient, an assess-
ment was to be made on 30 days' notice by the actuary on his determina-
tion that the amount of premiums in the policy were insufficient to cover
the assured's share of the increasing mortality cost due to advancing age
and the amount of deficiency properly chargeable to the member. The
policy also provided that, at the end of the estimated probable life of a
member, he had the option to surrender the policy, and receive a cash
disability benefit. *Held* that, where a member did not surrender a policy
at his probable death, the company could not charge him a permanent
increase in the annual premiums without the conditions contemplated by
the policy existing, since the company had only power under those con-
ditions to lawfully levy an assessment in order to replenish the equation
fund.

[Ed. Note.—For other cases, see Insurance, Dec. Dig. § 183.*]

3. INSURANCE (§ 192*)—LIFE POLICY—CONDITIONS—POWER OF ACTUARY.

Under such policy, an actuary has not power to arbitrarily determine
that there is a deficiency in the equation fund contrary to the fact, so as
to authorize an assessment.

[Ed. Note.—For other cases, see Insurance, Dec. Dig. § 192.*]

4. INSURANCE (§ 192*)—CONDITIONS IN LIFE POLICY—DETERMINATION—AC-
COUNTING.

Where the evidence tends strongly to show that there has been no ac-
tual deficiency in the equation fund, insured is entitled to a judicial ac-
counting, whether or not the condition has arisen which under the terms
of the policy would justify an increased charge on the insured for carry-
ing the insurance.

[Ed. Note.—For other cases, see Insurance, Dec. Dig. § 192.*]

Laughlin and Clarke, JJ., dissenting.

Appeal from Special Term, New York County.

Action by Robert M. Whiting against the Fidelity Mutual Life In-
surance Association of Philadelphia, Pa. From a judgment for de-
fendant, plaintiff appeals. Reversed, and new trial ordered.

The following is the opinion of the trial court, by Fitzgerald, J.:

The defendant is a foreign corporation organized under the laws of the state of Pennsylvania, and doing business in this state. Plaintiff is the holder of two policies of life insurance, which policies are precisely similar in all their legal aspects, and, for convenience sake, but one of these instruments will be considered. Policy E-45,322, for the sum of $2,500, was issued to the plaintiff December 13, 1893, at which time he was 57 years of age. By its terms the assured agreed to annually pay $58.83 to the mortality fund, $40.72 to the equation fund, and $10 to the expense fund, aggregating a total of $109.55. Among the conditions of the policy was a surrender clause in these words: "It is agreed that if this policy be legally surrendered on the 16th day of July, in the year 1905, being the end of probable life, said member shall receive as a cash disability benefit an equitable proportion of the equation fund (estimated according to the tabulated experience of thirty American offices to amount to $1,500), in which event the beneficiary hereunder shall have no claim whatever upon the said association, but, if not so surrendered, this equitable share of the equation fund shall thereafter be applied to the payment of the insurance afforded under this policy." It is admitted that the gross annual sum of $109.55 was regularly paid by the assured from the inception of the agreement until July 16, 1905, the date recited in the policy as the end of probable life. A short time prior to this period, plaintiff received a written communication from defendant in part as follows: "The end of your probable life, computed from age at entry, will occur on July 16th, 1905, when, if the insurance be continued in force, a readjustment of the premium is necessary. It is your privilege to surrender policy E-45322 for $281.25 in cash, or continue for life at a special premium of $309.60."

It appears that payments to the mortality and equation funds had been adjusted upon the tabulated experience of 30 American offices based upon age at entry, and it was provided that any saving within a period of five years from the date of the policy between the mortality assumed and the mortality experienced, thereby creating a surplus in the mortality fund, should belong to the general fund and inure to the benefit of the member and be deducted from his future payments, and that any deficiency in the same fund due to the advancing age of the member should be made good out of the equation fund. The object of the equation fund was to cover the member's share of increasing mortality cost due to advancing age, and the amount specified in the policy was estimated to be sufficient to accomplish this purpose during the period of probable life and create a surplus of $1,500 at the end of that period, and it was additionally provided that, if the amount specified should be found by the actuary to be insufficient, then and in that event the actuary should determine the amount of deficiency properly chargeable to the member, which amount, if not paid together with interest at the rate of 6 per cent. per annum, was chargeable against the policy. Fixed, unchangeable premiums are not provided for by the policy, and it is clear that, reduced to a simple statement, the plaintiff by the terms of this written agreement bound himself, first, to pay the amount specified in the policy; and, second, that, in the event that such amount should be found by the actuary to be insufficient, then that the actuary should determine the amount of deficiency properly chargeable, and that within 30 days from the date of notice thereof the assured would pay such additional amount to the treasurer, or, in default of payment, such amount might be charged against the policy. A condition requiring increased premiums might have arisen at any time during the continuance of the policy, and the existence of the condition and the amount of the increased premium were by express terms to be determined by the actuary. Prima facie the determination of the actuary in these respects must be regarded as a compliance with the terms of the policy, because the duty of making it is cast upon him by the contract. Uhlman v. New York Life Ins. Co., 109 N. Y. 421, 17 N. E. 363, 4 Am. St. Rep. 482. Plaintiff seeks to have read into the contract certain extracts from agents' compendiums and other pamphlets, but, where neither fraud nor mutual mistake is established, the rights of the policy holder must be determined by the written contract, into which all prior negotiations and agreements are merged. Lang-

don v. New York Life Ins. Co., 116 App. Div. 558, 101 N. Y. Supp. 914. Statements and representations contained in pamphlets and compendiums neither vary the written policy nor cause them to be construed into a waiver of its conditions. Ruse v. Mutual Benefit Life Ins. Co., 23 N. Y. 516; Fowler v. Metropolitan Life Ins. Co., 116 N. Y. 389, 22 N. E. 576, 5 L. R. A. 805; Untermyer v. Mutual Life Ins. Co. of New York, 128 App. Div. 615, 113 N. Y. Supp. 221. The publication and circulation of insurance advertisements containing highly colored supposed advantages to the beneficiary often, and, as is probable in the present instance, may mislead the policy holder into the belief that the policy he is receiving is a much more advantageous one than it in fact is, for the reason that the written instrument carefully excludes all possible liability except such as may arise from absolutely ascertained results. A legal construction of the written agreement requires a dismissal of the complaint, but the business methods of the defendant as disclosed by the record of this trial are certainly not to be commended by the court.

Complaint dismissed without costs.

Argued before INGRAHAM, P. J., and LAUGHLIN, CLARKE, SCOTT, and MILLER, JJ.

Alexander S. Bacon, for appellant.
William B. Ellison, for respondent.

SCOTT, J. As I read this record, the plaintiff is entitled to the aid of this court. There is no doubt that the relation between plaintiff and defendant is a contractual one, and that the policy expresses the contract. It needs no citation of authorities to maintain that proposition. The plaintiff holds two policies issued by defendant, which except as to the amount of premiums to be paid and the amount of insurance effected are identical. The larger one may be taken as the basis of discussion. It requires the plaintiff to pay an annual premium of $58.83 for the mortality fund, $40.72 for the equation fund, and $10 for the expense fund on or before the 25th day of January in every year, or, in lieu thereof, $29.03 on the 25th day of the months of January, April, July, and October in every year "during the continuance of this contract." The term of the contract is clearly measured by the life of the assured, for it is only upon his death that the defendant becomes obligated to pay the amount of the insurance. The defendant has either been itself confused, or has attempted to confuse the question by reason of a provision in the policy that on the 16th day of July, 1905, being the end of probable life, the assured may surrender the policy and receive a sum as a cash disability benefit. This date does not as defendant seems to assume mark the end of the contract, so that, if the insurance be continued, it will be under a new contract. There is extended to the assured merely an option which he may or may not avail himself of. If he does not, the original contract remains in force, under which the assured continues to be bound to pay the premium originally stipulated, unless a larger premium is or was fixed in the manner provided in the contract itself.

That this is the clear intention of the policy is further confirmed by the provisions contained therein that, if it be not surrendered at the date estimated at the end of probable life, "its equitable share of the equation fund shall thereafter be applied to the payment of the insurance afforded under this policy." When the plaintiff arrived at the date fixed by the contract as the end of probable life, he was informed

that, if he desired to continue the policy in force, he would be obliged to pay an annual premium of $309.60 or $82.04 quarterly, being practically three times the amount of the premium provided for by his contract. The justification for demanding this increased premium is sought to be found in certain conditions attached to and made part of the policy. The mortality fund, which is the fund from which death losses are to be paid, is treated in condition No. 9, and it is provided that:

"Any deficiency in this fund due to the increasing age of the member, shall be made good out of the equation fund."

Condition No. 10 provides that:

"The member shall pay into the equation fund (which shall be deemed and regarded as a surplus of the association) an amount sufficient to cover his share of the increasing mortality, due to the cost of advancing age, and, if the amount specified in the body of this policy for said purposes based on the tabulated experience of life insurance companies shall be found by the actuary to be insufficient, * * * then * * * the actuary shall determine the amount of deficiency properly chargeable to the member, which amount the member shall pay to the treasurer of the association within thirty days from the date of notice thereof."

The scheme of insurance outlined in the policy and its conditions is that the premium paid by the assured shall be appropriated from the beginning in fixed proportions to the mortality fund, the equation fund (representing surplus), and the expense fund. The mortality fund is to be used in paying losses, and, if found to be insufficient, is to be replenished from the equation fund (surplus), and, if the latter becomes insufficient, an assessment may be levied payable "within thirty days from the date of notice thereof." This provision that payment of the sum found necessary to replenish the equation fund shall be paid in thirty days after notice is appropriate to an assessment, but furnishes no authority for and is inappropriate to a permanent increase in the annual premiums, and no other provision is to be found in any clause of the policy or conditions which justifies an increase in the annual premium. It seems, therefore, that, while the defendant might under certain conditions lawfully levy an assessment in order to replenish the equation fund, it has reserved no right to permanently increase the annual premium.

In my opinion, however, enough appears in the case to require the court to call upon the defendant to justify any increased charge upon the plaintiff. The policy imposes upon the actuary the power and duty to do two things: First, to determine whether or not the amount specified in the body of the policy is insufficient to cover the assured's share of the increasing mortality cost due to advancing age; second, to determine the amount of deficiency properly chargeable to the member. Until the actuary has determined that there is a deficiency (according to the standards specified in the policy), he is without power to fix the amount of deficiency. Although the policy leaves this determination in the first instance to the actuary, he is not authorized to make such determination arbitrarily, or contrary to the fact. Upon a somewhat similar question as to the powers of the officers of a life

insurance company, the Court of Appeals said in Uhlman v. N. Y. Life Ins. Co., 109 N. Y. 421, 17 N. E. 363, 4 Am. St. Rep. 482:

"We do not, however, accede to the claim of the defendant herein to its full extent as made in the brief submitted, which is that the apportionment, as made by the defendant, is absolutely and at all events conclusive upon the policy holders. We hold that, under the terms of this policy, the apportionment was to be equitably made, and, in the first instance, by the defendant's officers or agents. But, inasmuch as the agreement is that the apportionment shall be an equitable one, the question of what is an equitable one, all the facts and circumstances being known, may be one over which the courts have supervision. Prima facie the apportionment, as made by the defendant, should be regarded as a compliance with the terms of the policy, or, in other words, should be regarded as an equitable apportionment. It should be thus regarded, because by the terms of the policy the duty of making it is cast upon the corporation, and it ought to be presumed that the defendant has performed its duty instead of presuming that it has failed to do so. But the question is still left: Has or has it not complied with its agreement to make an equitable apportionment? And the plaintiff and all others similarly situated have the right upon proper allegations of fact showing that the apportionment made by the defendant is not equitable or has been based upon erroneous principles to have a trial and make proof of such allegations, and, if proved, the court will declare the proper principles upon which the apportionment is to be made, so as to become an equitable apportionment."

The evidence in the present case tends very strongly to indicate that there was in fact no deficiency in the equation fund, or the plaintiff's share of it. On the contrary, there was a surplus to plaintiff's credit of $338.50 and the actuary himself when asked the point blank question whether or not there was a deficiency in the equation fund declined to say that there was, although he claimed that there was what he called a "contract deficiency; that is, a deficiency in the share of certain members," whatever that may mean. In short, as I read the evidence, the defendant has endeavored to permanently increase the plaintiff's annual premium without any authority whatever under the contract, and has professed to find a deficiency in his share in or contribution to the equation fund, when he has an actual surplus to his credit in it, and the fund itself shows no deficiency. The involved and cryptic explanations offered by the officers of the company do not in my opinion explain at all, and I think that a proper case is made out for a judicial accounting and determination whether or not the condition has arisen which, under the terms of the policy, would justify an increased charge upon the plaintiff for carrying the insurance. I am therefore in favor of a reversal of the judgment and a new trial.

INGRAHAM, P. J., and MILLER, J., concur. LAUGHLIN and CLARKE, JJ., dissent on the opinion of Mr. Justice Fitzgerald at Special Term.