John Hancock Mutual Life Insurance Company, Petitioner, et al.,[1] v. Commissioner of Internal Revenue, Respondent.

Docket Nos. 94789, 94790, 94791, 94792, 94793.
Promulgated September 27, 1940.

*David R. Shelton, Esq.*, for the petitioners.
*Lewis S. Pendleton, Esq.*, for the respondent.

[1] Proceedings of the following petitioners are consolidated herewith: The Northwestern Mutual Life Insurance Company; Connecticut General Life Insurance Company; State Mutual Life Assurance Company; and Equitable Life Insurance Company of Iowa.

OPINION.

BLACK: In each proceeding the parties have stipulated that "The sole question presented to the Board for decision in the instant proceeding is whether the petitioner is liable for payment of the aforesaid Federal estate tax, plus interest thereon, as trustee and transferee within the meaning of sections 315 (b) and 316 of the Revenue Act of 1926, as amended."

Section 315 (b) of the Revenue Act of 1926, as amended by section 803 (c) of the Revenue Act of 1932, and the material parts of section 316 of the Revenue Act of 1926 are printed in the margin.[2]

Although the respondent in his notices of liability determined that each petitioner was liable both as trustee and transferee, in his brief he says "The respondent's argument will be confined to the proposition that the petitioners are liable as transferees within the meaning of Section 315 (b)." We shall, therefore, first consider that proposition.

---

[2] SEC. 315 (b). If (1) except in the case of a bona fide sale for an adequate and full consideration in money or money's worth, the decedent makes a transfer, by trust or otherwise, of any property in contemplation of or intended to take effect in possession or enjoyment at or after his death, or makes a transfer, by trust or otherwise, under which he has retained for his life or for any period not ascertainable without reference to his death or for any period which does not in fact end before his death (A) the possession or enjoyment of, or the right to the income from, the property, or (B) the right, either alone or in conjunction with any person, to designate the persons who shall possess or enjoy the property or the income therefrom, or (2) if insurance passes under a contract executed by the decedent in favor of a specific beneficiary, and if in either case the tax in respect thereto is not paid when due, then the transferee, trustee, or beneficiary shall be personally liable for such tax, and such property, to the extent of the decedent's interest therein at the time of such transfer, or to the extent of such beneficiary's interest under such contract of insurance, shall be subject to a like lien equal to the amount of such tax. Any part of such property sold by such transferee or trustee to a bona fide purchaser for an adequate and full consideration in money or money's worth shall be divested of the lien and a like lien shall then attach to all the property of such transferee or trustee, except any part sold to a bona fide purchaser for an adequate and full consideration in money or money's worth.

SEC. 316. (a) The amounts of the following liabilities shall, except as hereinafter in this section provided, be assessed, collected, and paid in the same manner and subject to the same provisions and limitations as in the case of a deficiency in a tax imposed by this title (including the provisions in case of delinquency in payment after notice and demand, the provisions authorizing distraint and proceedings in court for collection, and the provisions prohibiting claims and suits for refunds) :

(1) The liability, at law or in equity, of a transferee of property of a decedent or donor, in respect of the tax (including interest, additional amounts, and additions to the tax provided by law) imposed by this title or by any prior estate tax Act or by any gift tax Act.

\*　　\*　　\*　　\*　　\*　　\*　　\*

Any such liability may be either as to the amount of tax shown on the return or as to any deficiency in tax.

\*　　\*　　\*　　\*　　\*　　\*　　\*

(e) As used in this section, the term "transferee" includes heir, legatee, devisee, and distributee.

Are petitioners, within the meaning of section 315 (b), transferees of the proceeds of the policies of insurance which were left on deposit with the insurance companies upon decedent's death? We think they are. It must be assumed that Congress in the enactment of section 315 (b) of the Revenue Act of 1926 as amended used the word "transferee" in its ordinary and commonly understood meaning. The word "transferee" is defined in Bouvier's Law Dictionary, vol. 3, p. 3308, and Black's Law Dictionary, p. 1748, as follows: "He to whom a transfer is made."

Each of the policies of insurance involved in this proceeding was taken out by decedent, Bert Hanna, on his own life and was made payable to beneficiaries other than his own estate. In each of the policies decedent reserved the right to change the beneficiaries and this right was outstanding at his death. Therefore at decedent's death the obligations of the insurance companies on these policies were (1) to pay to the decedent the cash surrender values; (2) to pay to his executor or administrator the face amounts of the policies and accumulations in the event that he so designated; (3) in the event that he failed during his lifetime to make any changes of beneficiaries, to retain the net proceeds of the policies and pay the same to the beneficiaries designated on the several settlement option contracts.

Since the decedent did not elect during his lifetime to accept the cash surrender values or to require payment of the proceeds to his executor or administrator, the entire face value of the policies came into the possession of the insurance companies at his death, to be used in making payments under the settlement options. Where the proceeds of a policy of insurance are paid to a beneficiary in a lump sum upon the insured's death then of course the beneficiary of the insurance policy is the transferee of the proceeds of the insurance policies and not the insurance companies. The respondent so concedes. But where upon the death of the insured the insurance company at the direction of the decedent pays over the proceeds of the policy to itself, to be held on deposit for deferred settlements with the named beneficiaries, it is a transferee. Whether it is a transferee liable for the tax depends upon considerations which we shall discuss later. It is of course true that such transfers as these are only book entries, but they are of substantial and important consequence.

As said by the Supreme Court, Appellate Division, of the State of New York, in *In re Scott's Will*, 293 New York Supplement 126; affirmed per curiam by the Court of Appeals of New York at 274 N. Y. 538; 10 N. E. (2d) 538; certiorari denied by the United States Supreme Court at 302 U. S. 721, "* * * upon the death of the insured there is a transfer to the insurance company of property, the proceeds of the policy, and, while this transfer may be simply a matter of bookkeeping involving no segregation of specific funds,

there is a sufficient change to justify the application of the provisions of section 124 of the Decedent Estate Law."

Petitioners contend that the above cited New York case is inapplicable to the instant case because section 124 of the Decedent Estate Law of the State of New York is an entirely different statute from section 315 (b) and section 316 of the Federal estate tax law. That the two statutes are entirely different is of course true. But if the New York courts were correct in the *Scott's Will* case, in holding the Northwestern Mutual Life Insurance Co. liable to the executor of Scott's estate for a proportionate part of the Federal and state estate taxes which the executor had paid because of the transfer of proceeds of policies of insurance which it had received to hold on deposit for purposes of deferred settlement with the designated beneficiaries, then we think by the same line of reasoning petitioners are liable for the tax here involved, under section 315 (b).

It seems to us that the Northwestern Mutual Life Insurance Co. in *In re Scott's Will, supra,* was making substantially the same contention that petitioners are making in the instant case, to wit: That in retaining the proceeds of insurance upon the insured's death and making deferred settlements with the beneficiaries it had not received any transfer of the decedent's assets.

What were the provisions of section 124 of the Decedent's Estate Law of New York, involved in *In re Scott's Will, supra?* Justice Dore in his dissenting opinion in that case states the provisions of section 124 to be as follows:

Section 124 of the Decedent Estate Law relates to the apportionment of federal and state taxes, and, so far as relevant, provides that, when an executor has paid a death tax on property required to be included in the gross estate, the amount of the tax so paid, unless the testator otherwise directs in his will, "shall be equitably prorated among the persons interested in the estate to whom such property is or may be transferred or to whom any benefit accrues," and that such prorating shall be made "in the proportion, as near as may be, that the value of the property * * * of each such person bears to the total value of the property * * * received by all such persons interested in the estate." Then follow provisions for the allowance of exemptions and other provisions not here relevant. After providing that, unless otherwise directed by the will, the executor shall pay the taxes, the section further provides that in all cases in which any property required to be included in the gross estate does not come into the possession of the executor as such "he shall be entitled, and it shall be his duty, to recover from whomever [thus in the original] is in possession, or from the persons interested in the estate, the proportionate amount of such tax payable by the persons interested in the estate with which such persons * * * are chargeable under the provisions of this section, and the surrogate may by order direct the payment of such amount of tax by such persons to the executor."

Now it must be remembered that it is not every transferee of assets that is liable for the debts of the transferor, including taxes. Only those transferees who are liable at law or in equity can be held under section 316. The respondent in this case is not making any

claim that petitioners are liable in equity as the transferees of decedent's assets. A liability of a transferee under the general principles of equity involves entirely different considerations from a liability of a transferee made liable by specific law. In the instant case it is respondent's contention that petitioners are liable in law as transferees because section 315 (b) imposes a personal liability upon the transferee, trustee, or beneficiary of decedent's assets for the unpaid estate tax limited to the value of the property received, and that petitioners have each received as transferees a transfer of such assets of a value in excess of the deficiency.

It is clear, of course, that, unless petitioners are transferees as that term is used in section 315 (b), no legal liability is imposed upon them by that section. It is also clear, we think, that petitioners were not beneficiaries as that word is used in clause (2) of section 315 (b). Respondent does not argue that they were. His contention is that they were transferees.

Petitioners argue that the language of section 315 (b) shows plainly that, in the case of insurance policies payable to beneficiaries other than decedent's estate, it was the intention of Congress to fix a personal liability only on the specific beneficiaries of such insurance policies and no such liability was intended to be fixed against the insurance companies. As we have already stated, we think this contention is true as to those policies of insurance which are payable in lump sums to designated beneficiaries. However, as we have already stated, where the decedent directs that the insurance company shall retain the proceeds of the insurance policies and pay them to the beneficiaries in deferred payments such as we have in the instant proceedings, we think the word transferee as used in section 315 (b) is broad enough to cover that situation and that the insurance companies should be held liable for the tax, limited of course to the extent provided in section 315 (b).

Petitioners strongly argue that Congress could not have intended to hold the insurance companies liable as transferees under section 315 (b) because they would be in no way interested in arriving at the correct amount of the estate tax and that the real parties at interest, to wit, the beneficiaries of the policies, might never have the opportunity to litigate the amount of the deficiency.

In a case like the present, where the Commissioner is seeking to hold the insurance companies as transferees under the provisions of section 315 (b) and 316, if the beneficiaries should believe that the deficiency has been erroneously determined perhaps they would have the right to intervene in the proceedings before the Board. Cf. *Estate of Caroline W. Frame*, 18 B. T. A. 300. That question we do not now decide, because we have no petitions for intervention pending before us. But, whether they would have the right to intervene

or not, if Congress has provided in section 315 (b) that under such circumstances as we have in the instant case that petitioners are personally liable for the tax to the extent provided in that section, then the Commissioner has the right to use the remedy provided in that section and section 316, and it is our duty to sustain him. For the reasons already stated, we think the Commissioner should be sustained on this point.

Having held that petitioners are liable at law as transferees by reason of the provisions of section 315 (b), it becomes unnecessary to determine whether petitioners are liable as trustees. The respondent apparently, by confining his argument to the proposition that petitioners are liable as transferees, has abandoned his determination that petitioners are also liable as trustees under section 315 (b). It seems appropriate to add, however, that under such circumstances as we have in the instant case the insurance companies are apparently not trustees for the beneficiaries of the policies.

In *Crossman Co.* v. *Rauch*, 263 N. Y. 264; 188 N. E. 748 (1934), the highest court of the State of New York held:

> The obligation of the insurance company constitutes a debt from the company to appellant, the beneficiary, under the policy. Although the word "trust" is used, the agreement is not in fact a trust agreement. The monthly payments which the company contracted to pay are definitely fixed in amount. They are not income on personal property. They constitute deferred payments which the company agreed to make to the beneficiary in consideration of the receipt at the death of insured of $50,000, the face value of the policy. The agreement provides: "The proceeds received by the company under this agreement shall be invested with its general corporate funds as a part thereof in securities in which such corporate funds may be invested." Richard on the Law of Insurance (4th Ed.), § 385, p. 684; *Uhlman* v. *New York Life Insurance Co.*, 109 N. Y. 421, 17 N. E. 363.

See also *Phoenix Mutual Life Insurance Co.* v. *Bailey*, 80 U. S. 616; *Pierowich* v. *Metropolitan Life Insurance Co.*, 282 Mich. 118; 275 N. W. 789; *Penn Mutual Life Insurance Co.* v. *Commissioner*, 92 Fed. (2d) 962; Griswold on Spendthrift Trusts, 1936 ed., sec. 112.

Reviewed by the Board.

*Decision will be entered under Rule 50.*

KERN dissents.

———

DISNEY, dissenting: I can not agree with the conclusion of the majority. Section 315 (b), relied upon to establish a status of transferees for the petitioners, refers in terms to a transfer by the decedent. The decedent merely paid premiums upon life insurance policies in connection with which he contracted for payment in a certain way. He did not transfer to the companies the amounts payable by them after his death, except in so far as he paid premiums, no doubt in

much less amount. He had the contractual right to arrange payment under the contract either in lump sum or in periodic payments. The only contract he had made at time of death was to provide for periodic payments and it seems to me the fact that he could have provided otherwise is immaterial. At the time of death he held a contract with each of the petitioners, providing for payment in a certain way. I think, therefore, that the status of each of the petitioners is that of contractor only. The majority opinion seems to state that, if the insurance had been payable in lump sums to designated beneficiaries, the insurance companies, during the interim between the death of the insured and such payment, would not have been transferees. The distinction then is between a policy providing for payment in lump sum, and one providing for payment in periodic installments. That, however, is a mere detail as to the manner of discharge of a contract fixed by the terms thereof and if the insurance company is not a transferee after the death of the insured and before it complies with its contract and pays the money in a lump sum, I am unable to see why it is a transferee if, instead, it discharges its contract by a series of payments. In its origin, the word "transfer" denotes "to carry across," that is, to carry from one person or place to another. I am unable to think that there is such a transfer in the mere retention of moneys by the insurance company until payment thereof in accordance with its contract. Many insurance policies provide that, in case of total permanent disability of the insured, he shall, without further payment of premiums, receive fixed monthly payments, in a manner analogous to that of the payment of the beneficiaries in installments under the contract herein involved. I am unable to believe that the totally and permanently disabled insured in the supposed case receives payment from a transferee. He merely receives it under the terms of the contract from the other party to the contract. Logic forbids, I think, that the insurance company be considered to have assumed a status other than that of a contracting party, merely because of a contingency covered by the contract, to wit, the contingency of total permanent disability of the insured. The supposed situation is wholly analogous, in my opinion, to that arising upon the death of the insured. Death, like total permanent disability, merely gives a right to payment under the contract. I can find no metamorphosis of a party to the contract into a transferee. There may be administrative difficulties in the view here taken, but to hold otherwise would, I think, be to add to the statute.

SMITH agrees with this dissent.